PATRICIA TOBOSA and EDWARD TOBOSA, Plaintiffs-Appellants, *v.* THOMAS C. OWENS, M.D. and THE QUEEN'S MEDICAL CENTER, Defendants-Appellees, and JOHN BELLATTI, M.D., CLIFFORD HORNBACK, M.D., and JOHN DOES 5-50, Defendants

NO. 11772

(CIV. NO. 85-3374)

AUGUST 31, 1987

NAKAMURA, ACTING C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED

306

## OPINION OF THE COURT BY NAKAMURA, J.

One seeking damages for a medical tort[1] must "submit the claim to [a] medical claim conciliation panel [formed pursuant to HRS § 671-11[2]] before a suit based [thereon] may be commenced in any court of this State." HRS § 671-12.[3] Furthermore, the plaintiff's

---

[1] Hawaii Revised Statutes (HRS) § 671-1(2) (1985) provides the following definition of the term:

"Medical tort" means professional negligence, the rendering of professional service without informed consent, or an error or omission in professional practice, by a health care provider, which proximately causes death, injury, or other damage to a patient.

[2] HRS § 671-11(a) reads:

There are established medical claim conciliation panels which shall review and render findings and advisory opinions on the issues of liability and damages in medical tort claims against health care providers.

[3] HRS § 671-12, in pertinent part, provides:

Effective July 1, 1976, any person or the person's representative claiming that a medical tort has been committed shall submit the claim to the medical claim conciliation panel before a suit based on the claim may be commenced in any court of this State.

complaint cannot "specify the amount of damages [sought] but shall contain a prayer for general relief." HRS § 671-4.[4] The ultimate question in this appeal is whether or not it was appropriate in the circumstances to dismiss the plaintiffs' suit on grounds that they failed to abide by the foregoing provisions of HRS §§ 671-12 and 671-4 in suing a hospital and a physician on a claim of negligence in the rendition of professional services and for an alleged misuse of Hawaii Rules of Civil Procedure (HRCP) 17(d).[5] We conclude from a review of the record that it was not.

## I.

## A.

Patricia Tobosa and her husband Edward Tobosa brought an action in the Circuit Court of the First Circuit against "Doe Defendants 1-50" on September 4, 1985. The initial pleading filed on

---

[4] HRS § 671-4(a) reads:

No complaint, counterclaim, or cross-claim in an action for medical tort shall specify the amount of damages prayed for but shall contain a prayer for general relief, including a statement that the amount of damages is within the minimum jurisdictional limits of the court in which the action is brought.

[5] HRCP 17(d), in relevant part, reads:

(d) Unidentified Defendant.

(1) When it shall be necessary or proper to make a person a party defendant and the party desiring the inclusion of the person as a party defendant has been unable to ascertain the entire name of the defendant or a part of his name to ascertain his identity, the party desiring the inclusion of the person as a party defendant shall in accordance with the criteria of Rule 11 of these rules set forth in a pleading the person's interest in the action, so much of his name as is known (and if unknown, a fictitious name shall be used), and shall set forth with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity.

(2) Subject to HRS section 657-22, the person intended shall thereupon be considered a party defendant to the action, as having notice of the institution of the action against him, and as sufficiently described for all purposes, including services of process, and the action shall proceed against him.

their behalf averred she "underwent surgery at Queen's Medical Center" on October 20, 1983, and during the surgical procedure "a piece of a tissue retractor . . . broke off and became lodged in [her] body." The pleading further alleged the procedure "was completed without the . . . fragment being removed," Mrs. Tobosa therefore "did not make a satisfactory recovery from the surgery," she "experienced severe and continual intense pain" as a consequence, and on December 8, 1983 "she underwent a second operation to have the retractor fragment removed."

"Doe Defendants 1-50," the complaint averred, "are persons, corporations, partnerships, [and] hospitals [who] performed some act in a negligent or . . . tortious manner and/or designed, tested, inspected, produced, manufactured, distributed, supplied and/or sold the retractor . . . or are persons or entities who cannot be named as Defendants at this time because the Medical Claim Conciliation process has not yet been completed." Patricia Tobosa, the complaint stated, "has been unable to identify [the Doe Defendants] to date" despite "diligent efforts to determine [their] true names and identities" and "has sued said Defendants with fictitious names pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure." Leave to amend the complaint to reflect the true names, identities, capacities, acts, and omissions of the defendants upon confirmation thereof was also requested. "The Doe Defendants who participated in the [surgery performed on Mrs. Tobosa] on . . . October 20, 1983," the complaint further alleged, "were negligent" and the retractor they used "contained design and/or manufacturing defects" and also "did not contain adequate warnings of dangers and/or defects associated with its use."

The defendants were charged with liability for damages based on negligence, strict liability, breaches of express and implied warranties, and unfair and/or deceptive practices in violation of HRS § 480-2. Loss of consortium on account of the injuries sustained by Patricia Tobosa was claimed on behalf of Edward Tobosa. The pleading prayed that Patricia Tobosa be awarded "[g]eneral damages in an amount . . . not less than $750,000.00," "[s]pecial damages in an amount to be proved at trial," and "[t]reble damages pursuant to [HRS] § 480-13." And "[g]eneral damages in an amount . . . not less than $100,000.00," "[s]pecial damages," and "[t]reble damages" were sought on behalf of Edward Tobosa.

## B.

On September 6, 1985, notwithstanding averments in the complaint filed two days earlier that the defendants were being sued under fictitious names because their true names and identities could not be determined, the plaintiffs submitted the medical tort claim to a medical claim conciliation panel, naming The Queen's Medical Center, Dr. Thomas C. Owens, Dr. John Bellatti, and Dr. Clifford Hornback as the health care providers responsible for Mrs. Tobosa's injuries. On March 12, 1986, the panel to which the claim was referred for hearing found actionable negligence in the care and treatment Queen's afforded Mrs. Tobosa.[6] But its advisory decision was rejected by Queen's Medical Center.[7]

On April 28, 1986 the plaintiffs moved to identify Dr. Owens as John Doe 1, Dr. Bellatti as John Doe 2, Dr. Hornback as John Doe 3, and The Queen's Medical Center as John Doe 4. The ex parte motion was granted, the foregoing persons and entity were made party defendants, and the circuit court further ordered that they "be served with a copy of the Complaint and Summons as is by law provided." But on the following day, since no one had been served within six months of the commencement of the action, a Notice of Proposed Dismissal for want of a diligent effort to promptly effect service of the complaint as demanded by the rules of the circuit courts, was served on plaintiffs' attorney.[8] Upon objection made by

---

[6] HRS § 671-11(b) provides in part that "[a] medical claim conciliation panel shall be formed for each claim filed pursuant to section 671-12 and after each panel renders its decision or the claim is otherwise disposed of it shall be disbanded."

HRS § 671-15 directs the panel to file a written advisory decision within thirty days after the completion of the hearing. Section 671-15 further directs the panel to "decide the issue of liability and . . . state its conclusions" whether "the health care provider was actionably negligent" in providing care or not.

[7] HRS § 671-16, in relevant part, provides:

The claimant may institute litigation based upon the claim in an appropriate court only after a party to a medical claim conciliation panel hearing rejects the decision of the panel, or after the eighteen-month period under section 671-18 has expired.

[8] Rule 28 of the Rules of the Circuit Courts of the State of Hawaii provides:

A diligent effort to effect service shall be made in all actions, and if no service be made within 6 months after an action has been filed then after notice of not less than 5 days the same may be dismissed.

counsel, however, the court withdrew the proposal on condition that service be effected within ninety days. Queen's was served with a copy of the complaint on August 6, 1986, and Dr. Owens was served on August 19, 1986. Neither Dr. Bellatti nor Dr. Hornback was served within the period allowed by the court, and the plaintiffs voluntarily dismissed them from the case on September 2, 1986.

Queen's then moved for dismissal of the claims against it or, alternatively, for reconsideration of the order granting the plaintiffs' ex parte motion for identification of John Doe Defendants 1 through 4. Dismissal was urged on the ground that the circuit court lacked jurisdiction of the plaintiffs' claims because suit was filed before they were submitted to a conciliation panel and the panel's decision was rejected by Queen's and also on the ground that the plaintiffs' complaint prayed for a specific amount in damages. Queen's sought reconsideration of the order granting the motion to identify John Doe Defendants 1 through 4 on the ground that HRCP 17(d) had been misused "to avoid a jurisdictional bar to filing a lawsuit against known parties." Dr. Owens followed with his motion seeking similar relief on similar grounds. The motions were heard separately, but both were granted. The plaintiffs appeal from the orders of dismissal.

## II.

The plaintiffs argue the orders dismissing their claims must be vacated because there was substantial compliance with the requirements of HRS § 671-12, there was no violation of HRCP 17(d), and the assertion of claims premised on strict tort liability, breach of warranty, and unfair or deceptive trade practices against the unknown manufacturer justified the specification of what was being sought in damages. We begin our consideration of the issues by examining the statutes the plaintiffs purportedly evaded and the procedural rule they allegedly abused.

### A.

The perception of a "crisis in the area of medical malpractice" caused the enactment of the statutory provisions now codified in

HRS chapter 671. Session Laws of Hawaii (SLH) 1976, c 219, § 1. Among other objectives, the legislature sought thereby to "[s]tabilize the medical malpractice insurance situation by reintroducing some principles of predictability and spreading of risk" and "[d]ecrease the costs of the legal system and improve the efficiency of its procedures to the end that awards are more rationally connected to actual damages." *Id.* A significant aspect of the legislative effort to make the system less costly and more efficient was the creation of "medical claim conciliation panels [to] review and render findings and advisory opinions on the issues of liability and damages in medical tort claims against health care providers." HRS § 671-11(a). The panels undoubtedly were established "to encourage early settlement of claims and to weed out unmeritorious claims." Hse. Stand. Comm. Rep. No. 417, in 1976 House Journal, at 1460. Thus, "any person or the person's representative claiming that a medical tort has been committed [must now] submit the claim to [a] medical claim conciliation panel before a suit based on the claim may be commenced in any court of this State." HRS § 671-12. And "[t]he claimant may institute litigation based upon the claim in an appropriate court only after a party to a ... panel hearing rejects the decision of the panel." *Id.* § 671-16.

The claimant's right to seek redress for a medical tort through litigation has been conditioned also upon the omission of a traditional "ad damnum" clause from his complaint. By reason of HRS § 671-4, the complaint cannot "specify the amount of damages prayed for but shall contain a prayer for general relief, including a statement that the amount of damages is within the minimum jurisdictional limits of the court in which the action is brought." *See supra* note 4. These provisions, the legislature felt, would "provide protection against serious embarrassment and possible damage to the reputation of the health care provider merely upon the filing of a claim." Hse. Stand. Comm. Rep. No. 571, in 1976 House Journal, at 1539.

### B.

The procedural rule in question, HRCP 17(d), renders it possible for actions to be commenced against defendants whose identities have yet to be ascertained. A primary purpose of the rule is to

"toll the statute of limitations with respect to Doe defendants who cannot be identified prior to the running of the statute." *Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.*, 65 Haw. 592, 596, 656 P.2d 84, 88 (1982). One described as a presently unidentifiable defendant in accord with the requirements of HRCP 17(d)(1) is thereafter deemed "a party defendant to the action, as having notice of the institution of the action against him, and as sufficiently described for all purposes, including service of process, and the action shall proceed against him." HRCP 17(d)(2).

A plaintiff who would make an unidentified person a party defendant is required in accord with the criteria of HRCP 11 to "set forth in a pleading the person's interest in the action, so much of his name as is known . . . , and shall set forth with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity." *See supra* note 5. The relevant criteria of HRCP 11 are that "[t]he signature of an attorney [affixed to a pleading] constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." Inasmuch as the unidentified person is thereby made a party defendant without actual notice of the action, the demands of due process compel strict observance of the requisites of HRCP 17(d) and the criteria of HRCP 11 with regard to pleadings.

III.

A.

The plaintiffs assert there was substantial compliance with HRS § 671-12. The requirements of section 671-12, they say, were satisfied "by filing a Doe allegation complaint and not naming the health care providers until after the [panel] decision was rejected." This, in their view, was consistent with the statute's "purpose of screening frivolous claims against health care providers and encouraging settlement." They maintain the complaint "was filed only to preserve the statute of limitations against the manufacturer and avoid duplicative litigation." Otherwise, they claim, the statute of limitations may have run in favor of the unknown manufacturer

or they would have had to file two lawsuits. Yet, it was not the bringing of multiple lawsuits against different defendants on different claims arising out of the same transaction that was interdicted by HRS §§ 671-12 and 671-16 — it is the commencement of a lawsuit against health care providers before a panel decision and a party's rejection of the advisory finding that is enjoined.

True, our rules of civil procedure are meant "to promote judicial efficiency and economy," *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. ___, ___, 707 P.2d 365, 371 (1985); and the rules encourage a plaintiff to join in one action as defendants all persons who may be jointly or severally liable for damages arising out of the same transaction, occurrence or series of transactions or occurrences. *See* HRCP 20. Still, the legislature has declared the submission of the claim to a conciliation panel and the rejection of the panel's decision by a party to the panel hearing are prerequisites to a suit for damages premised on alleged malpractice, *see* HRS §§ 671-12 and 671-16, and plaintiffs filed suit before submitting their claims to a conciliation panel. We certainly could not say there was compliance with the letter of the law; whether there was substantial compliance with the spirit of the law is problematic. Nevertheless, we are reluctant to affirm the dismissal of the action on the ground that the circuit court lacked jurisdiction over the matter.

We are mindful, of course, that the several circuit courts "have jurisdiction, except as otherwise expressly provided by statute," of civil actions and proceedings, HRS § 603-21.5, and the legislature has expressly provided by statute that a medical malpractice claim must be processed by a conciliation panel before suit is filed. Yet it can be said with some justification that the legislative purpose in enacting the statute was served despite the premature filing. The required hearing was held, the claim against Queen's was deemed meritorious by the advisory body, and the health care providers had an opportunity to avoid litigation, all before they were named as defendants in the suit.

Our reluctance to affirm the circuit court here, however, carries no suggestion that litigants will be able in the future to sidestep with impunity the requirements of HRS §§ 671-12 and 671-16. The procedures outlined there are jurisdictional prerequisites to suit,

and they will be enforced. Here, there was substantial compliance with the statute. We hesitate to apply the statute strictly and deprive the plaintiffs of an opportunity to have their claims heard in court since there was no prior intimation that the provisions would be so applied. We have no doubt about the reasonableness of the temporary barrier to suit erected by the legislature. "[E]very civil litigant [is not entitled] to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication . . . ." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437 (1982). Still, we are not in the habit of lightly regarding an injured person's right to redress in a court of law. Where, as here, the defendants do not appear to have been unduly prejudiced by a hasty and ill-advised anonymous (as far as the defendants were concerned) pleading and a statute conditioning a common-law right is being expounded for the first time, the termination of ostensibly actionable claims without forewarning hardly seems consistent with our common-law traditions.

With respect to their breach of HRS § 671-4, the plaintiffs rationalize the inclusion of more than a simple prayer for general relief in their original pleading on grounds that it "alleged not only medical malpractice, but also product liability, breach of warranty and unfair and/or deceptive trade practices." But the unequivocal legislative command is: "No complaint . . . in an action for medical tort shall specify the amount of damages prayed for but shall contain a prayer for general relief . . . ." HRS § 671-4. And we reiterate, the legislature did not prohibit the bringing of multiple suits against multiple defendants on different claims arising from the same transaction; it proscribed the specification of damages in a complaint charging medical malpractice.

However, we do not view the prohibition in section 671-4 in the same light as the directives of sections 671-12 and 671-16. The latter are jurisdictional hurdles — the former is something less. We could not affirm a dismissal premised on a violation of section 671-4. But a court has other means at its disposal to deal with the problem of the errant or recalcitrant pleader. *See* HRS § 603-21.9(6).[9]

---

[9] HRS § 603-21.9(6) reads:

The several circuit courts shall have power:

## B.

Turning, finally, to the alleged abuse of the rule of civil procedure, we note plaintiffs concede knowledge of "the identity of Defendants-Appellees Queen's, Owens and the other health care providers" prior to the commencement of their action. But they claim a lack of knowledge of "the facts giving them a cause of action against each health care provider." And they maintain they "were not in a position to name either the manufacturer or the health care provider Defendants" until the panel hearing was concluded. They argue there was no abuse of HRCP 17(d) because the rule may be used when a litigant "knows the defendant's identity, but does not know the facts giving him a cause of action against the person (or is unaware that the law gives him a cause of action against the person)."

A reading of the complaint leaves us with an impression that. while the plaintiffs may not have known the identity of the manufacturer, they had more than sufficient knowledge of the facts giving rise to a cause of action against Queen's and Dr. Owens, at least. Moreover, we are struck by the anomaly of the argument, since a purpose of the mandated informal hearing is to furnish a prospective plaintiff with sufficient knowledge to assess the claim, to settle it if this be wise, and to file suit only if necessary.

Unlike most of the Hawaii Rules of Civil Procedure, Rule 17(d) is not patterned after a federal rule; it was drafted by our Committee on Civil Rules, and what little has been said in writing about it is inapplicable here. Yet if anything is clear about its application, it is the need for scrupulous observance of its procedures and the

---

.  .  .    .    .

(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

This, in our view, provides a circuit court with adequate means to deal with the problem.

criteria for pleadings established by HRCP 11.[10] In this case, we cannot say there was, particularly where Rule 11 is concerned.

Under Rule 11, "[t]he signature of an attorney constitutes a certificate by him that he has read the pleading [and] that to the best of his knowledge, information, and belief there is good ground to support it . . . ." *See supra* note 10. This places "a moral obligation upon the attorney to satisfy himself that there are good grounds for the action or defense." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1333, at 499 (1969) (footnote omitted). "If a pleading is . . . signed with intent to defeat the purpose of [the] rule, it may be stricken as sham and false . . . ." *See supra* note 10. "For a wilful violation . . . an attorney may be subjected to appropriate disciplinary action." *Id.*

Though the attorney's obligation thereunder may be a moral one, a pleader who has knowledge of the identities of defendants yet files a John Doe complaint undoubtedly commits a wilful violation of the rule.[11] The circuit court, of course, may strike the false pleading, but this would serve no constructive purpose in the circumstances. A better course of action, in our opinion, would be to

---

[10] HRCP 11 reads:

SIGNING OF PLEADINGS. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. Except when ex parte relief is sought upon a pleading or when otherwise specifically provided by rule, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

[11] Wright and Miller's discussion of possible disciplinary action for violations of former Rule 11 of the Federal Rules of Civil Procedure, from which HRCP 11 was derived, reads as follows:

Rule 11 does not specify what types of disciplinary action may be taken for an attorney's willful violation of the rule. Several possible sanctions seem appropriate. The Advisory Committee's Note to Rule 11 states that Section 1927 of the

hold counsel personally liable for the excess in costs and fees engendered by the violation.

The orders of dismissal are vacated, and the case is remanded for further proceedings, including the assessment of sanctions against plaintiffs' attorney for violations of HRS § 671-4 and HRCP 17(d).

*Prescilla Mills (David C. Schutter, George W. Playdon, Jr., Thomas D. Collins, III, and Stuart T. Feeley* on the briefs; *Schutter, Playdon, Glickstein,* of counsel) for appellants.

*Rene McWade (Dennis E. W. O'Connor* and *H. William Goebert, Jr.* with her on the brief; *Reinwald, O'Connor & Marrack,* of counsel) for Appellee Queen's Medical Center.

*Edmund Burke (Debra A. McHugh* with him on the brief; *Burke, Sakai, McPheeters, Bordner & Gilardy,* of counsel) for Appellee Owens.

---

Judicial Code, which permits the court to hold a counsel personally liable when he has multiplied the proceedings so as to increase costs unreasonably and vexatiously, is unaffected by the rule. Presumably, the court could assess any excess costs caused by a failure to sign or by a disregard of the good faith obligation imposed on the signer against the defaulting attorney. Conceivably, the lawyer might be cited for contempt, or, in an extreme situation, disbarment proceedings may be instituted. However, there is little evidence of frequent use of sanctions for the violation of Rule 11.

C. Wright & A. Miller, *supra,* § 1334, at 503 (footnote omitted).