137 P.3d 980

John YAMANE, as Special Administrator of the Estate of John Duong; Hung Duong, and Duc Lai, Plaintiffs–Appellants,

v.

Elizabeth C. POHLSON, M.D., Mitsuo Hattori, M.D., Mitsuo Hattori, M.D., Inc., and Kapiʻolani Medical Specialists, Defendants–Appellees,

and

Kapiʻolani Medical Center for Women and Children; John Does 1–10, Defendants.

No. 27047.

Supreme Court of Hawaiʻi.

June 27, 2006.

James J. Bickerton and Daniel A. Morris (of Bickerton Saunders Dang & Sullivan), on the briefs, Honolulu, for plaintiffs-appellants.

Kenneth S. Robbins, Leighton M. Hara, and Wendy M. Yamamoto (of Robbins & Associates), on the briefs, Honolulu, for defendant-appellee Kapiʻolani Medical Specialists.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and Circuit Judge ALM, in place of ACOBA, J., recused.

Opinion of the Court by MOON, C.J.

The present appeal concerns the issue whether plaintiffs-appellants John Yamane, as special administrator of the Estate of John Duong (John), Hung Duong, and Duc Lai [hereinafter, collectively, the plaintiffs] have complied with Hawaiʻi Revised Statutes (HRS) chapter 671, which established the Medical Claims Conciliation Panel [hereinafter, the MCCP or the panel] to "review and render findings and advisory opinions on the issues of liability and damages in medical tort [1] claims against health care providers[,]" HRS § 671–11(a) (1993), prior to filing their medical malpractice suit in court. Briefly stated, twelve-year-old John was taken by his father, Duong, to the emergency room at defendant Kapiʻolani Medical Center for Women and Children [hereinafter, the Medical Center] because he was having difficulty breathing. It was determined that John had a large mediastinal mass (tumor) compressing his airway. Following a surgical biopsy to determine the histology of the tumor—performed by defendant-appellee Elizabeth Pohlson, M.D. (Dr. Pohlson), a self-employed pediatric surgeon, and defendant-appellee Mitsuo Hattori, M.D. (Dr. Hattori), an anesthesiologist—John passed away due to cardio respiratory arrest. Thereafter, the plaintiffs filed a medical tort claim before the MCCP, naming, *inter alia*, the Medical Center and defendant-appellee Kapiʻolani Medical Specialist (KMS), alleging that John's death was a result of the medical care and treatment rendered by their employee-physicians, who were not specifically named as defendants. The plaintiffs also named Dr. Pohlson as a respondent in the MCCP action, but did not name Kelly Woodruff, M.D. (Dr. Woodruff), a specialist in pediatric hematology/oncology and a former employee of KMS, who was involved in the pre-biopsy care and treatment of John. The plaintiffs alleged that the health care providers [2] failed to take precautionary measures to shrink the tumor in order to provide increased airway protection prior to undertaking a biopsy.

When the plaintiffs ultimately filed their complaint in the circuit court, they did not name Dr. Woodruff as a defendant, but alleged vicarious liability against KMS for the acts and/or of omissions of its employees. The Circuit Court of the First Circuit, the Honorable Bert I. Ayabe presiding, dismissed the plaintiffs' vicarious liability claim against KMS on the ground that the plaintiffs were precluded from asserting such claim because Dr. Woodruff was not named

---

1. HRS § 671–1(2) (1993) defines "medical tort" to mean "professional negligence, the rendering of professional service without informed consent, or an error or omission in professional practice, by a health care provider, which proximately causes death, injury, or other damage to a patient."

2. HRS § 671–1(1) (1993) defines "health care provider" as "a physician or surgeon licensed under chapter 453, a physician and surgeon licensed under chapter 460, a podiatrist licensed under chapter 463E, a health care facility as defined in section 323D–2, and the employees of any of them."

in the MCCP action and that, therefore, the plaintiffs had not perfected a vicarious liability claim against KMS as a condition precedent to bringing an action in circuit court. Consequently, the circuit court granted KMS's motion to dismiss for lack of subject matter jurisdiction. In accordance with Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) (2004),[3] a final judgment was entered with respect to KMS on December 20, 2004, and the plaintiffs now appeal from that judgment.

On appeal, the plaintiffs argue that the circuit court erred in dismissing KMS because HRS chapter 671 does not require the plaintiffs to name KMS's employee, Dr. Woodruff, as a party in the antecedent MCCP proceedings and that such requirement would be contrary to vicarious liability law. The plaintiffs also assert that the circuit court erred in dismissing KMS for lack of jurisdiction inasmuch as KMS waived its right to challenge jurisdiction by not filing its motion prior to the deadline for substantive motions.

Inasmuch as we conclude that the plaintiffs have complied with the requirements of HRS chapter 671, we vacate the circuit court's December 20, 2004 final judgment and remand this case for further proceedings.

## I. *BACKGROUND*

### A. *Factual Background*

On August 8, 1998, John was admitted to the Medical Center with complaints of coughing and difficulty breathing. A chest x-ray and CT scan revealed a large anterior mediastinal mass[4] (tumor) compressing or displacing John's trachea (windpipe) and right main bronchus. John was placed in the Pediatric Intensive Care Unit (PICU) for further evaluation and treatment.

3. HRCP Rule 54(b) provides in pertinent part:

When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. ...

On August 9, 1998, oncology and surgical consultations were obtained from Dr. Woodruff and Dr. Pohlson. Following several conferences with John's family, a decision was made to perform a surgical biopsy in order to obtain a pathological diagnosis and determine the type of cancer treatment to use.

On August 9, 1998 at 3:55 p.m., Dr. Pohlson, assisted by Kimberly Moseley, M.D. (Dr. Moseley), performed the biopsy surgery with Dr. Hattori providing anesthesia care. Although an initial blood gas analysis revealed that John was severely acidotic (excessive acid in the body fluids), John was transferred out of the operating room to the PICU and placed under the care of Paula Vanderford, M.D. (Dr. Vanderford), a pediatric intensivist employed by KMS. A second blood gas analysis indicated worsening acidosis and hypoxia (lack of oxygen), and, at 7:45 p.m., John went into cardiopulmonary arrest. Efforts to resuscitate him failed, and he was pronounced dead at approximately 8:10 p.m. on August 9, 1998.

### B. *Procedural Background*

#### 1. The MCCP Procedure Generally

The MCCP (now codified in HRS chapter 671) is a "comprehensive system of medical malpractice dispute resolution," *Dubin v. Wakuzawa*, 89 Hawai'i 188, 197, 970 P.2d 496, 505 (1999), created because of a "crisis in the area of medical malpractice." *Tobosa v. Owens*, 69 Haw. 305, 311, 741 P.2d 1280, 1285 (1987) (internal quotation marks omitted).

Among other objectives, the legislature sought thereby to "[s]tabilize the medical malpractice insurance situation by reintroducing some principles of predictability and spreading of risk" and "[d]ecrease the costs of the legal system and improve the efficiency of its procedures to the end that

4. The mediastinum is the region between the pleural sacs (double layers of membrane that surround each lungs). It is separated into three compartments. The anterior mediastinum extends from the sternum anteriorly to the pericardium and brachiocephalic vessels posteriorly, and contains the thymus gland, the anterior mediastinal lymph nodes, and the internal mammary arteries and veins. *Harrison's Principles of Internal Medicine*, at 1475 (14th ed.1998).

awards are more rationally connected to the actual damages." *Id.* ... The panels undoubtedly were established "to encourage early settlement of claims and to weed out unmeritorious claims." Hse. Stand. Comm. Rep. No. 417, in 1976 House Journal, at 1460.

*Id.* at 311–12, 741 P.2d at 1285 (brackets in original); *see also Doe v. City & County of Honolulu*, 93 Hawai'i 490, 497–98, 6 P.3d 362, 369–70 (App.2000).

In the context of the instant appeal, the following provisions of HRS chapter 671 are relevant:

§ 671–12 [ (1993) ] Review by panel required; notice; presentation of claims; request for a more definite statement of the claim. (a) Effective July 1, 1976, any person or the person's representative claiming that a medical tort has been committed shall submit a statement of the claim to the [MCCP] before a suit based on the claim may be commenced in any court of this State. Claims shall be submitted to the [MCCP] in writing. The claimant shall set forth facts upon which the claim is based and shall include the names of all parties against whom the claim is or may be made who are then known to the claimant ....

. . . .

§ 671–16 [ (Supp.2005) ] Subsequent litigation; exclusive evidence. The claimant may institute litigation based upon the claim in an appropriate court only after a party to a [MCCP] hearing rejects the decision of the panel, or after the twelve-month period under section 671–18 [ (Supp. 2005)[5]] has expired.

No statement made in the course of the hearing of the [MCCP] shall be admissible in evidence either as an admission, to impeach the credibility of a witness, or for any other purpose in any trial of the action[.]

(Bold emphases in original.) (Underscored emphases added.) During the MCCP process, the panel[6] conducts an informal hearing and, if no settlement is reached, issues a written advisory decision, including a finding of damages, if any. HRS §§ 671–13 and –15 (1993); *see also Lum v. Queen's Med. Ctr.*, 69 Haw. 419, 422, 744 P.2d 1205, 1207 (1987) ("A reading of the provisions of Chapter 671 suggests a scheme whereby the members of a [MCCP] can share their knowledge and expertise in determining what information and evidence are relevant and necessary in rendering an advisory opinion." (Footnote omitted.)).

### 2. The MCCP Proceedings in the Instant Case

■ On August 7, 2000, the plaintiffs filed a medical tort claim before the MCCP, pursuant to HRS § 671–12, against twelve respondents as indicated in the table below:

| Respondent | Description |
| --- | --- |
| Dr. Pohlson | the physician who performed the surgical biopsy |
| Carlos E. Moreno–Cabral, M.D. | cardiothoracic surgeon consulted during the biopsy |
| Dr. Hattori | the anesthesiologist who assisted in John's care during the surgical biopsy |
| Mitsuo Hattori, M.D., Inc. | Dr. Hattori's medical practice |

5. HRS § 671–18 provides that:

The filing of the claim with the [MCCP] or with an approved alternative dispute resolution provider shall toll any applicable statute of limitations, and any such statute of limitations shall remain tolled until sixty days after the date the decision of the panel or the notification of completion from the approved alternative dispute resolution provider is mailed or delivered to the parties. *If a decision by the [MCCP] is not reached within twelve months, or the alternative dispute resolution process is not completed within twelve months, the statute of limitations shall resume running and the party filing the claim may commence a suit based on the claim in any appropriate court of this State.* The panel or the approved alternative dispute resolution provider shall notify all parties in writing of this provision.
(Emphasis added.)

6. Pursuant to HRS § 671–11(b) (1993), each panel is composed of one person experienced in the personal injury claims settlement process, a licensed attorney experienced in trial practice, and a licensed physician or surgeon.

| | |
|---|---|
| Dr. Vanderford | a KMS-employed pediatric intensivist involved in the post-biopsy care and treatment of John |
| Todd T. Kuwaye, M.D. | a pediatric resident |
| Dr. Moseley | a surgical resident who assisted Dr. Pohlson in the surgical biopsy |
| the Medical Center | the hospital where John was admitted for evaluation and treatment |
| KMS | the physicians group which employed Dr. Vanderford |
| The State of Hawaiʻi dba University of Hawaiʻi John A. Burns School of Medicine | the institution which conducts the residency training program |
| Hawaiʻi Residency Programs, Inc. | a not for profit corporation which coordinated the residency training of Drs. Kuwaye and Moseley. |
| John Does 1–10; Jane Does 1–10; | unidentified defendants |

The plaintiffs alleged that the above respondents were negligent in their treatment and care of John and that Dr. Pohlson and Dr. Hattori failed to obtain informed consent from the plaintiffs regarding the course of treatment. Specifically, the plaintiffs alleged that KMS, under the doctrine of respondeat superior,[7] was vicariously liable for the negligent acts and omissions of its employee-physicians who treated John.

On September 12, 2000, KMS filed a request for a more definite statement pursuant to HRS § 671–12(c) (1993),[8] seeking an order from the Department of Commerce and Consumer Affairs (DCCA) requiring the plaintiffs to name the specific employees of KMS whose care allegedly imposed vicarious liability, as well as the treatment by each such employee who was alleged to have breached the standard of care. Although no order was issued by the DCCA director with respect to KMS's request, the record reflects that the DCCA director, on September 21, 2000, entered an order granting the Medical Center's request (which it had apparently filed) for "a more definite statement setting forth all of the facts upon which [the plaintiffs] base[d] their] claim against [the Medical Center]."

On September 29, 2000, the plaintiffs complied with the DCCA's order and submitted a second claim letter with additional factual information as to both the Medical Center and KMS, noting that, in addition to Dr. Vanderford, who is an employee of KMS and was named an individual respondent for her alleged negligence in John's post-operative care, the plaintiffs also alleged vicarious liability for the negligent acts of any and all other KMS employees connected with John's care treatment. In their second claim letter, the plaintiffs also included the following caveat:

> Please be informed that these further clarifications shall not be construed to limit [the plaintiffs'] theories of liability; and are subject to further modification based upon additional information as it becomes available.

Thereafter, on October 3, 2000, the Medical Center filed its second request for a more definite statement, which was summarily denied.

---

7. Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business. *See State v. Hoshijo ex rel. White*, 102 Hawaiʻi 307, 319, 76 P.3d 550, 562 (2003).

8. Section 671–12(c) provides:
 If the statement of the claim in the notice is so vague or ambiguous that any party receiving notice of the claim cannot reasonably be required to frame a written response, the party may submit a written request to the director of commerce and consumer affairs for a more definite statement before filing the written response.... The director may deny, grant, or modify the request at the director's own discretion, without the necessity of a hearing, although the director may reach a decision after consulting with the panel or the claimant.
 HRS § 671–6 (1993) further states that:
 The director of commerce and consumer affairs shall be responsible for the implementation and administration of this chapter and shall adopt rules, in conformity with chapter 91, necessary for the purposes of this chapter.

On October 20, 2002, KMS's counsel sent a letter to the plaintiffs' counsel, indicating that, because

> [the plaintiffs] have not voiced criticisms of any other [KMS]-employed physicians . . . , we assume that the claim against [KMS] is based upon the alleged negligence of only Dr. Vanderford. Based on these assumptions, we have not re-filed a Request for More Definite Statement, but have prepared and submitted our Response to Claim.

In response, the plaintiffs' counsel, in a letter dated November 3, 2000, stated:

> As you know, the MCCP process is jurisdictional, and many of the facts are not clear yet because no depositions have been taken. Accordingly, you should not assume that the claims against KMS are "based upon the negligence of only Dr. Vanderford," as you suggest[ed] in your letter. It is possible that any of the other respondents may allege that another (currently unidentified) respondent did something below the standard of care, or my own expert might so opine.
>
> Realistically, absent further developments or information, I think KMS and any other employees, agents, apparent agents, ostensible agents, and/or agents by estoppel of KMS or any other respondents connected with John Duong's care and treatment will be deemed to be vicariously liable for their negligent acts and omissions.

On October 22, 2000, the plaintiffs filed their MCCP pre-hearing statement, reiterating their position that, "[d]espite knowledge that John had an extremely large mediastinal mass with significant narrowing of the trachea, one or more of John's health care providers failed to take necessary precautions against the risk of total airway obstruction." The pre-hearing statement included, *inter alia,* facts relating to Dr. Woodruff's examination of John, her discussion with John's parents, and her performance of a bone marrow aspiration to determine whether the tumor was cancerous.

In response, KMS stated in its responsive pre-hearing statement that:

> The only claim of independent negligence asserted as to KMS related to care rendered by Dr. Vanderford who is alleged to have "negligently monitored and treated [John's] condition, and conducted the intubation attempts, resuscitation efforts and the code blue." At the time of the hearing, it will be Dr. Vanderford's position that she was not consulted, and had no legal responsibility, with respect to the advisability of preoperative or intraoperative airway management. After the biopsy, when John was returned to the PICU, he was in respiratory distress, Dr. Vanderford attempted multiple interventions to remedy the situation. The fact that her resuscitation efforts were unsuccessful is no reflection of the quality of care rendered by Dr. Vanderford.

The Medical Center also filed its pre-hearing statement, wherein it maintained that:

> In [the plaintiffs'] discussion of the facts regarding the allegedly deficient medical care provided to John [ ], [the plaintiffs] have not identified or named any specific person as being an allegedly negligent employee, servant, or agent of [the Medical Center]. [The plaintiffs] have not offered any specific criticisms of the nursing or support staff at [the Medical Center].

On January 24, 2001, the MCCP held a hearing on the plaintiffs' claims. At the hearing, Dr. Pohlson testified, asserting that she rejected the various treatments (*i.e.,* radiation therapy and/or administration of corticosteroid therapy) that could have shrunk the tumor on the basis of warnings and recommendations she received from Dr. Woodruff, who insisted she go ahead with the surgical biopsy without first shrinking the tumor. The plaintiffs claimed that this was the first time they were aware of Dr. Woodruff's substantial involvement in John's treatment.[9]

The next day, the plaintiffs' counsel informed KMS, via a letter dated January 25, 2001, that:

---

9. The plaintiffs further contend that their MCCP claim was filed two days prior to the expiration of the two-year period after John's death and,

thus, "it was too late to file a new medical tort claim naming Dr. Woodruff individually."

We have no earlier notice of Dr. Woodruff's alleged active role in the decision not to administer corticosteroid and/or irradiation therapy to John Duong; and, of course, discovery has not been available because it is not permitted in MCCP proceedings. Therefore, Dr. Woodruff was not named individually as a [r]espondent in the MCCP claim.

However, based on the assumed accuracy of Dr. Pohlson's MCCP testimony regarding the extent of Dr. Woodruff's active involvement in the decision not to attempt to shrink the mediastinal mass pre-operatively, and by virtue of Dr. Woodruff's status as an employee and/or agent (ostensible, apparent or otherwise) of KMS . . ., it is our position that KMS . . . [is] vicariously liable for Dr. Woodruff's tortious acts and/or omissions in this matter. We will be proceeding on that basis, in part, in the First Circuit Court action which will be filed shortly after receipt of the MCCP's decision.

On the same day, the MCCP issued its advisory opinion, finding no actionable negligence. On March 8, 2001, the plaintiffs filed their rejection of the MCCP's advisory opinion pursuant to HRS § 671–16.

### 3. The Circuit Court Proceedings

On March 22, 2001, the plaintiffs commenced the instant action in the circuit court. The complaint included three counts, alleging negligence (Count I), lack of informed consent (Count II), and loss of a chance of survival (Count III), naming as defendants Dr. Pohlson, Dr. Hattori, Mitsuo Hattori, M.D., Inc.,[10] the Medical Center, and KMS [hereinafter, collectively, the defendants].[11] Like the MCCP claim letter, the plaintiffs' complaint did not name Dr. Woodruff as a defendant, but, as previously indicated, the plaintiffs alleged in their complaint a claim for vicarious liability against KMS.

Thereafter, the defendants separately filed their answer to the complaint. On December 23, 2002, the plaintiffs submitted their pretrial statement. On February 21, 2003, the defendants filed their responsive pretrial statements. In its responsive pretrial statement, KMS admitted the following facts:

An employee of KMS performed an oncology consultation on John . . . on August 9, 1998, and provided opinions and recommendations regarding the treatment of John [ ].

An employee of KMS performed a bone marrow aspiration on John . . . on August 9, 1998, which was reported to be non-diagnostic.

Between May 2, 2003 and May 10, 2004, the circuit court granted various motions for summary judgment and partial summary judgment, including substantive joinders, filed by the Medical Center, Dr. Pohlson, Dr. Hattori, and KMS, which rulings are not at issue in this appeal. As a result of these various rulings, the following claims remained: (1) Counts I (informed consent) and II (negligence) as to Dr. Pohlson and Dr. Hattori; and (2) Count II (negligence) as to KMS.[12] Trial was scheduled for October 25, 2004, and the circuit court ordered that all substantive motions be filed by September 15, 2004.

One week before trial (on October 18, 2004), KMS moved to dismiss the plaintiffs' complaint on the ground that, *inter alia*, the circuit court lacked subject matter jurisdiction to review the plaintiffs' claims inasmuch as the plaintiffs failed to name or criticize Dr. Woodruff in the underlying MCCP action and, thus, did not "comply with HRS chapter 671, a condition precedent to any medical malpractice action."[13] In the alternative,

---

**10.** Hereinafter, Dr. Hattori and Mitsuo Hattori, M.D., Inc. are collectively referred to as Dr. Hattori.

**11.** The plaintiffs elected not to proceed against Dr. Moseley, Dr. Cabral, Dr. Kuwaye, Hawai'i Residency Programs, and the John A. Burns School of Medicine. The plaintiffs also did not name Dr. Vanderford as a defendant based on counsel's agreement that Dr. Vanderford is employed by KMS and acted within the course and scope of employment while caring for John.

**12.** The plaintiffs also sought partial summary judgment as to Count II (lack of informed consent) against Dr. Pohlson and Dr. Hattori. However, the circuit court denied the plaintiffs' motion.

**13.** Both Dr. Pohlson and Dr. Hattori filed a statement of no position to KMS's motion to dismiss.

KMS argued that summary judgment should be granted in its favor. On October 20, 2004, the plaintiffs filed their opposition, wherein they maintained that (1) they had fully satisfied the letter and spirit of HRS chapter 671 because KMS was named as a party in the MCCP proceedings as well as in the underlying litigation and that (2) Dr. Woodruff was not a necessary party to the MCCP claim for vicarious liability. The plaintiffs further asserted that, because KMS filed its motion to dismiss long after the deadline for substantive motions, which expired on September 15, 2004, KMS had waived and/or was estopped from asserting the lack of jurisdiction.

A hearing on KMS's motion to dismiss was held on October 21, 2004. It appears that the circuit court orally granted KMS's motion inasmuch as, on October 25, 2004 (the scheduled trial date), the plaintiffs filed their motion for reconsideration of KMS's dismissal or, in the alternative, for HRCP 54(b) certification and/or leave to file interlocutory appeal and for stay of proceedings pending appeal. On the same day, the circuit court held a hearing on the plaintiffs' motion for reconsideration. The court denied the plaintiffs' motion, but

f[ound] that there [was] no just reason for delay. The court direct[ed] the entry of judgment ... in accordance with [HRCP] Rule 54(b), and the matter will be stayed pending the result of the appeal.

On October 29, 2004, the circuit court issued a written order granting KMS's motion to dismiss, stating specifically that

[the p]laintiffs failed to comply with [c]hapter 671 of the [HRS] as [Dr.] Woodruff ... was not named as a party in the MCCP hearing. Therefore, [the p]laintiffs are precluded from bringing their claims against Dr. Woodruff in this lawsuit and [the p]laintiffs cannot sustain a vicarious liability claim against KMS.

Accordingly, KMS's motion is hereby granted as this court lacks subject matter jurisdiction to hear [the p]laintiffs' claims against Dr. Woodruff.

Therefore, the court dismissed all of the plaintiffs' claims that were premised on the alleged acts or omissions of Dr. Woodruff and granted dismissal of all claims against

KMS. On December 13, 2004, the circuit court filed its order denying the plaintiffs' motion for reconsideration and granting their request for a HRCP Rule 54(b) certification. Thereafter, a final judgment was entered on December 20, 2004. On January 4, 2005, the plaintiffs timely filed their notice of appeal.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

 A trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo*. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)[.] Moreover, we adopt the view of the Ninth Circuit Court of Appeals in *Love v. United States*, 871 F.2d 1488 (9th Cir. 1989):

Our review [of a motion to dismiss for lack of subject matter jurisdiction] is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff[s]. Dismissal is improper unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitled [them] to relief."

*Id.* at 1491[.] However, "when considering a motion to dismiss pursuant to [HRCP] Rule 12(b)(1) the [trial] court is not restricted to the face of the pleadings, but may review any evidence, such as affidavit and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy*, 850 F.2d at 560 (citations omitted); *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 213 (1990).

*Casumpang v. ILWU, Local 142*, 94 Hawai'i 330, 337, 13 P.3d 1235, 1242 (2000) (quoting *Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 239–40, 842 P.2d 634, 637 (1992)) (some brackets in original) (some citations omitted).

### B. Statutory Interpretation

 "The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo*." *Liberty Mut. Fire Ins. Co. v. Dennison*, 108

Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005) (quoting *Labrador v. Liberty Mut. Group*, 103 Hawai'i 206, 211, 81 P.3d 386, 391 (2003)) (internal quotation marks omitted). In so doing, this court must adhere to the well-established rule of statutory construction that the "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Gray v. Admin. Dir. of the Courts*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (citations omitted).

### III. *DISCUSSION*

As previously stated, the circuit court dismissed the plaintiffs' remaining claim of negligence against KMS, which was premised on the actions or inactions of Dr. Woodruff, based upon its lack of subject matter jurisdiction to review the plaintiffs' claim in light of their failure to name or criticize Dr. Woodruff in the underlying MCCP action. On appeal, the plaintiffs argue that the order dismissing their claim against KMS must be reversed because, *inter alia*, the circuit court's dismissal

> tranforms the MCCP process from an advisory, informal forum meant to weed out unmeritorious claims, to one with pleading requirements stricter than those of the judicial system. The dismissal also runs contrary to all established principles of vicarious liability and is premised upon the mistaken belief that a vicarious liability claim "against [KMS]" is the same as a "claim against Dr. Woodruff."

The plaintiffs further maintain that, inasmuch as KMS brought its motion to dismiss after the deadline for substantive motions and on the eve of trial, KMS waived its rights to object to jurisdiction. The plaintiffs, therefore, submit that the circuit court erred in considering KMS's motion.

KMS, however, argues that the circuit court properly dismissed the plaintiffs' claim against it when the plaintiffs failed to comport with the jurisdictional requirements of HRS chapter 671. KMS contends that the plaintiffs

> named Dr. Vanderford as the only KMS employed physician at the MCCP hearing,

and thus, only Dr. Vanderford's alleged negligence was put before the MCCP for consideration. As a result, Dr. Woodruff's actions or inactions were not considered by the panel and neither she nor KMS, her employer, were afforded an opportunity to defend against any claims based on her conduct in the circuit court action.

Thus, KMS submits that the plaintiffs frustrated the legislative intent and policy of HRS chapter 671 by completely bypassing the MCCP process with respect to Dr. Woodruff's alleged acts or omissions in the care and treatment of John.

The ultimate question in this appeal is whether it was appropriate in the circumstances to dismiss the plaintiffs' suit against KMS on the ground that they failed to abide by the prerequisites provided in HRS chapter 671 prior to commencing the action in the circuit court on a claim of vicarious liability by virtue of KMS's employees' alleged negligence in rendering professional medical services. Preliminarily, however, we address whether KMS has waived its right to contest subject matter jurisdiction by failing to raise the issue prior to the deadline for substantive motions.

### A. *Subject Matter Jurisdiction*

The plaintiffs argue that "the [c]ircuit [c]ourt is a court of general jurisdiction, and a party **can waive** its claim that the court lacks jurisdiction and be estopped from raising the issue thereafter." (Emphasis in original). In support of their contention, the plaintiffs rely upon case law from California, Indiana, and Missouri. Particularly, the plaintiffs quote the following from *In re Marriage of Neal*, 699 S.W.2d 92 (Mo.Ct.App. 1985):

> Where the subject matter of litigation is within the general jurisdiction of the trial court, the claim of want of jurisdiction by reason of the existence of exceptional or special circumstances can be waived if not timely raised.

*Id.* at 94 (citations omitted). However, existing Hawai'i authority controls.

■ HRCP Rule 12(h)(3) (2004) provides that, "[w]henever it appears by suggestion of

the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." (Emphasis added.) Further, it is well established that "lack of subject matter jurisdiction can never be waived by any party at any time." *Chun v. Employees' Ret. Sys.*, 73 Haw. 9, 14, 828 P.2d 260, 263 (1992) (citation omitted); *see also Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 69, 919 P.2d 969, 981 (1996). Accordingly, the plaintiffs' contention and reliance upon case law from other jurisdictions are unavailing inasmuch as this court has held that the jurisdictional question can never be waived by any party at any time and that "[s]uch a question is in order at any stage of the case[.]" *In re Application of Rice*, 68 Haw. 334, 335, 713 P.2d 426, 427 (1986). We, therefore, hold that the circuit court did not err in considering KMS's motion to dismiss.[14] We now turn our attention to the remaining issue in this appeal, *i.e.*, whether the plaintiffs have satisfied the requirements of HRS chapter 671.

### B. *Compliance with HRS Chapter 671*

■ As previously stated, the plaintiffs alleged—not in the MCCP proceedings, but during the circuit court proceedings—that KMS was vicariously liable for the negligence of its employee, Dr. Woodruff, for her failure to advise Dr. Pohlson to begin corticosteroid or radiation therapy prior to John's biopsy. As a result, the circuit court ruled that it lacked jurisdiction to entertain the plaintiff's theory of liability with respect to KMS.

It is well-established that the MCCP requirement of HRS chapter 671 is a precondition to suit—although determinations of the panel have no preclusive effect on subsequent litigation. *See, e.g., Garcia v. Kaiser Found. Hosps.*, 90 Hawai'i 425, 441, 978 P.2d 863, 879 (1999) (holding that "the circuit court did not err in concluding that it had no subject matter jurisdiction as a result of Plaintiffs' failure to comply with the requirements of HRS § 671–12[,]" which mandated that such claims be first filed with the MCCP prior to filing suit); *see also Hum v. Dericks*, 162 F.R.D. 628, 636 (D.Haw.1995) ("While in Hawai'i state courts the MCCP procedure is a prerequisite to suit, it does not determine the outcome of a lawsuit in state court.").[15] As this court has indicated, "[t]he procedures outlined [in HRS §§ 671–12 and –16] are jurisdictional prerequisites to suit, and they will be enforced." *Tobosa*, 69 Haw. at 314–15, 741 P.2d at 1286.

Here, the plaintiffs submitted a medical claim against KMS to the MCCP in a letter dated August 7, 2000. The letter stated that the plaintiffs' claims against KMS were based on the theory of respondeat superior, alleging that KMS was vicariously liable for the negligent acts and omissions of its agents, servants, and employees. KMS, however, argues that the plaintiffs failed to comply with HRS chapter 671's requirements

---

14. Although we recognize that subject matter jurisdiction may be raised at any stage of the proceeding, we emphasize here that our approval of the circuit court's consideration of KMS's motion should not be construed as condoning KMS's action in filing its motion on the eve of trial, which was clearly in direct violation of the court's expressed deadline for filing substantive motions.

 We further note that, during the hearing on KMS's motion to dismiss, the plaintiffs requested that the court sanction KMS for violating the court-ordered deadline, regardless whether the court granted or denied the motion. At the hearing, KMS maintained that the issue of subject matter jurisdiction did not arise until the trial court's rulings on motions in limine established that the plaintiffs' claims against KMS would be limited to the acts or omissions of Dr. Woodruff (and not Dr. Vanderford). In rebuttal thereto, the plaintiffs argued that KMS via an e-mail from the plaintiffs' counsel to KMS's counsel, dated

July 9, 2004, approximately two months prior to the September 15, 2004 substantive motions deadline, that the plaintiffs' claims against KMS would be premised solely on the acts or omissions of Dr. Woodruff. The trial court took the matter under advisement, including the motion to dismiss. Although the court's written order, dated October 29, 2004, granted KMS's motion to dismiss, the order is silent with respect to the plaintiffs' oral request for sanctions.

15. Indeed, HRS § 671–16 provides in relevant part that:

 No decision, conclusion, finding, or recommendation of the [MCCP] on the issue of liability or on the issue of damages shall be admitted into evidence in any subsequent trial, nor shall any party to the [MCCP] hearing, or the counsel or other representative of such party, refer or comment thereon in an opening statement, an argument, or at any other time, to the court or jury[.]

because they named "Dr. Vanderford as the only KMS employed physician at the MCCP hearing[.]" We cannot agree inasmuch as HRS § 671–12(a) requires only that a "claimant ... set forth facts upon which the claim is based and ... include the names of all parties against whom the claim is or may be made *who are then known to the claimant.*" (Emphasis added.) As previously indicated, the plaintiffs did not discover Dr. Woodruff's allegedly substantial, active involvement in making or participating in the decision to proceed with John's biopsy without first shrinking the tumor until the MCCP hearing via Dr. Pohlson's testimony. Nevertheless, the plaintiffs had named KMS as a respondent and had asserted a vicarious liability claim against it. Nowhere in the statute does it require the plaintiffs to name "all known negligent health care providers," as KMS contends, with respect to their claim against KMS. Having filed the requisite MCCP claim, participated in the required hearing, and rejected the MCCP's finding of no actionable negligence, we believe the plaintiffs have satisfied HRS chapter 671's statutory prerequisites for filing suit in circuit court.

■■■ KMS, however, contends that the plaintiffs frustrated the legislative intent and policy of HRS chapter 671 by completely bypassing the MCCP process with respect to Dr. Woodruff's alleged acts or omissions in the care and treatment of John. We disagree. The plaintiffs' complaint did not include any claim against Dr. Woodruff individually. As the plaintiffs point out, it is well settled that a vicarious liability claim does not require that the agents or employees of the entity sought to be held liable be named as parties. "The employee is not a necessary party to a suit against his employer under respondeat superior." *Hall v. Nat'l Serv. Indus., Inc.,* 172 F.R.D. 157, 159 (E.D.Pa.1997) (internal quotation marks and brackets omitted) (quoting *Rieser v. Dist. of Columbia,* 563 F.2d 462, 469 n. 39 (D.C.Cir.1977)); *see also Cheney v. Hailey,* 686 P.2d 808, 812 (Colo.Ct.App.1984); *Kocsis v. Harrison,* 249 Neb. 274, 543 N.W.2d 164, 168–69 (1996); *Trans Union Leasing Corp. v. Hamilton,* 93 N.M. 310, 600 P.2d 256, 258 (1979); *Vendrell v. Sch. Dist. No. 26C Malheur County,* 226 Or. 263, 360

P.2d 282, 289 (1961). To hold, as the circuit court did, that the plaintiffs' failure to comply with HRS chapter 671 because Dr. Woodruff "was not named as a party in the MCCP hearing" precludes the plaintiffs from asserting a vicarious liability claim against KMS would run afoul of the well-established doctrine of respondeat superior/vicarious liability.

Accordingly, we hold that the circuit court erred in dismissing the plaintiffs' claim against KMS.

## IV. CONCLUSION

Based on the foregoing, we vacate the First Circuit Court's December 20, 2004 final judgment and remand this case for further proceedings.

