**Electronically Filed**
**Intermediate Court of Appeals**
**29114**
**27-SEP-2012**
**12:06 PM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---


MAGDALENA CAMPOS, an individual,
Plaintiff-Appellant,
vs.
MARRHEY CARE HOME, LLC,
a Hawai'i Limited Liability Company;
MARCELA ORESCO CARLOS, an individual; and
CASE MANAGEMENT PROFESSIONAL, INC.,
a Hawai'i corporation, Defendants-Appellees,
and
DOE DEFENDANTS 1-30, Defendants.


NO. 29114


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-0053)


September 27, 2012


NAKAMURA, C.J., and FOLEY and LEONARD, JJ.


OPINION OF THE COURT BY NAKAMURA, C.J.


Plaintiff-Appellant Magdalena Campos (Campos), an elderly woman in need of assistance with daily living activities, was placed by Defendant-Appellee Case Management Professionals, Inc. (CMP) with Defendant-Appellee Marrhey Care Home, LLC

(Marrhey Care Home), a Type I expanded/extended care Adult Residential Care Home (ARCH). Marrhey Care Home was owned and operated by Defendant-Appellee Marcela Oresco Carlos (Carlos). Campos alleged that while at Marrhey Care Home, she was mistreated, physically and mentally abused, not provided with proper basic care, and deprived of prescribed medications, access to doctors, and a proper diet.

Campos filed a complaint against Carlos, Marrhey Care Home, and CMP (collectively, "Defendants") alleging negligence, false imprisonment, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Circuit Court of the First Circuit (Circuit Court)[1] dismissed the complaint for lack of subject matter jurisdiction because Campos had failed to submit her claim to a Medical Claims Conciliation Panel (MCCP), pursuant to Hawaii Revised Statutes (HRS) § 671-12(a) (1993), prior to filing her complaint.

The question presented by this appeal is whether Campos's claims against Defendants constitute "medical torts" committed by "health care providers" which triggered the statutory obligation to submit the claims to an MCCP before filing suit. For the reasons explained below, we conclude that Campos's claims were not medical torts, and therefore, she was not required to submit her claims to an MCCP before filing suit. Accordingly, we hold that the Circuit Court erred in dismissing Campos's complaint.

BACKGROUND

Campos, who needed assistance with her daily living activities and personal care, sought placement in a care home through CMP. CMP was a case management agency licensed by the Department of Human Services (DHS), whose services included assisting clients in locating and obtaining admission to care homes, applying for programs, developing a service plan of care,

_____

[1] The Honorable Glenn J. Kim presided.

performing comprehensive nursing and psychosocial assessments, and monitoring the care provided by care homes. Agnes Reyes, CMP's President and Clinical Administrator, was a registered nurse and former certified case manager.

CMP placed Campos with Marrhey Care Home, which was licensed by the Department of Health (DOH) as a Type I extended/expanded care ARCH.[2] Carlos, the owner and operator of Marrhey Care Home, was certified as a nurse aide.[3]

Campos alleged in her complaint that CMP agreed to find a home care provider for her and placed her with Marrhey Care Home. Campos asserted that shortly after being placed with Marrhey Care Home, she was taken to the hospital as the result of not receiving an adequate diet or living conditions, which upset Carlos and caused Carlos to retaliate upon Campos's return by striking Campos, confining Campos to her room, and not taking Campos for a follow up examination the next day as requested by her treating physicians. Campos further alleged that Carlos and Marrhey Care Home failed to provide Campos with "basic proper care and treatment," with the medication Campos had been prescribed by her physicians, and with a proper diet; that Carlos and Marrhey Care Home failed to take Campos for medical treatment; that Carlos physically and mentally abused Campos, threatened her with physical harm if she complained about her

--------

[2] Carlos submitted a declaration in the Circuit Court asserting that since 1998, Marrhey Care Home has been licensed as a "Type I expanded/extended adult residential care home." Campos did not submit evidence contradicting Carlos's declaration, and the Circuit Court apparently found that Marrhey Care Home was licenced as a Type I expanded ARCH and extended care ARCH in rendering its decision. We likewise view Marrhey Care Home as being a licenced Type I expanded ARCH and extended care ARCH in deciding this appeal.

We note that the applicable statutes and regulations use the terms "expanded ARCH," "expanded care ARCH," and "extended care ARCH." These terms are defined in essentially the same way and any differences in their definitions are not material to the analysis in this appeal. Therefore, we use the terms interchangeably, but will primarily use the term "expanded ARCH."

[3] The Hawaiʻi Administrative Rules (HAR) applicable to this case required that a primary caregiver for a Type I expanded ARCH reside in the expanded ARCH and be a nurse aid or licensed nurse. HAR § 11-101-8(h) (1998).

treatment to outsiders, imposed corporal punishment on her, and left her in the care of "persons who were not properly trained or qualified to provide care to assisted living patients"; and that "as the result of the neglect of care," she suffered physical injuries, including "a deep bruise and swollen knee." Campos's daughter subsequently discovered the alleged mistreatment, took Campos to a doctor, and removed Campos from Marrhey Care Home.

Campos's complaint alleged five counts as follows: Count I -- negligence against all Defendants; Count II -- false imprisonment against Carlos and Marrhey Care Home; Count III -- assault and battery against Carlos; Count IV -- intentional infliction of emotional distress against all Defendants; and Count V -- negligent infliction of emotional distress against all Defendants.

CMP filed a motion to dismiss for lack of subject matter jurisdiction under Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(1) (2000). In its motion, CMP argued that Campos failed to submit her claims to an MCCP prior to filing her complaint with the Circuit Court as required by HRS §§ 671-12 (1993) and 671-16 (Supp. 2011). Marrhey Care Home and Carlos filed a substantive joinder in the motion. After a hearing on the motion, the Circuit Court granted the motion to dismiss, concluding that it lacked subject matter jurisdiction. Campos filed a motion for reconsideration, which the Circuit Court denied. The Circuit Court filed its Amended Judgment on March 20, 2008, which entered judgment against Campos and in favor of Defendants on all claims in the complaint for lack of subject matter jurisdiction. This appeal followed.

DISCUSSION

Campos argues that she was not required to submit the claims in her complaint to an MCCP as a condition precedent to her filing suit because her claims are not "medical torts" and Defendants are not "health care providers" as defined by HRS § 671-1 (1993). Campos therefore asserts that the Circuit Court

4

erred in dismissing her complaint for lack of jurisdiction. We agree that the Circuit Court erred in dismissing Campos's complaint.

I.

HRS § 671-12(a) provides in relevant part: "Effective July 1, 1976, any person or the person's representative claiming that a medical tort has been committed shall submit a statement of the claim to the medical claim conciliation panel before a suit based on the claim may be commenced in any court of this State." Under HRS § 671-16, "[t]he claimant may institute litigation based upon the claim in an appropriate court only after a party to a medical claim conciliation panel hearing rejects the decision of the panel," or after a period of twelve-months from the filing of the claim has expired.[4] Compliance with HRS §§ 671-12 and 671-16 are jurisdictional prerequisites for filing suit on a medical tort claim. Tobasa v. Owens, 69 Haw. 305, 314-15, 741 P.2d 1280, 1286 (1987). Thus, a person cannot file suit for a medical tort, and the court lacks jurisdiction, unless the medical tort claim is first submitted to an MCCP.[5]

Campos did not submit her claims to an MCCP prior to filing her complaint. The Circuit Court determined that Defendants were "health care providers" and that Campos's claims were "medical torts" within the meaning of HRS Chapter 671. It therefore dismissed Campos's complaint for lack of jurisdiction.

---

[4] The twelve-month period begins to run from the filing of the claim with an MCCP or with an approved alternative dispute resolution provider. See HRS §§ 671-16.6 and 671-18 (Supp. 2011).

[5] In 2012, the Hawai'i Legislature made substantial changes to HRS Chapter 671, which will take effect on January 1, 2013. 2012 Haw. Sess. Laws Act 296 (Act 296). Among other things, the Legislature amended HRS Chapter 671 by using the term "inquiry" instead of "claim," renaming an MCCP as a Medical Inquiry and Conciliation Panel (MICP), deleting the decision-making function of the panels, and instead emphasizing the use by panels of conciliation and mediation to resolve matters before them. Id. at §§ 1, 4. However, Act 296 still generally requires the submission of a medical tort "inquiry" to an MICP as a prerequisite to filing suit. Id. at § 4. In addition, the definitions of "medical tort" and "heath care provider" at issue in this appeal have not changed in pertinent part.

Our decision in this case turns on the interpretation of the term "medical tort," which incorporates the term "heath care provider." See HRS § 671-1.

We review a trial court's dismissal for lack of subject matter jurisdiction *de novo*. Casumpang v. ILWU, Local 142, 94 Hawai'i 330, 337, 13 P.3d 1235, 1242 (2000). In addition, the interpretation of a statute is a question of law, which we review *de novo*. Garcia v. Kaiser Found. Hosps., 90 Hawai'i 425, 430, 978 P.2d 863, 868 (1999). The Hawai'i Supreme Court has stated:

> "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting State v. Cullen, 86 Hawai'i 1, 8-9, 946 P.2d 955, 963-64 (1997)). This court has rejected, however, an approach to statutory construction which is limited to the words of a statute. Four Star Ins. Agency, Inc. v. Hawaiian Elec. Indus., Inc., 89 Hawai'i 427, 431, 974 P.2d 1017, 1021 (1999) (quoting Bragg v. State Farm Mut. Auto. Ins. Co., 81 Hawai'i 302, 306, 916 P.2d 1203, 1207 (1996) (citation omitted)). Instead, we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. Shipley v. Ala Moana Hotel, 83 Hawai'i 361, 364-65, 926 P.2d 1284, 1287-88 (1996) (citing State v. Toyomura, 80 Hawai'i 8, 19, 904 P.2d 893, 904 (1995)). In doing so, we may consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1-15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." State v. Ake, 88 Hawai'i 389, 395, 967 P.2d 221, 227 (1998) (quoting HRS § 1-16 (1993)).

Id. at 437-38, 978 P.2d 875-76 (brackets and ellipsis points in original).

II.

A.

In 1976, the Hawai'i Legislature enacted HRS Chapter 671 entitled "Medical Torts." This enactment was prompted and supported by findings by the Legislature that (1) Hawai'i was affected by the "national crisis in the area of medical malpractice"; (2) only one insurance carrier was "actively providing medical malpractice coverage in the State"; and (3) "[p]remium rates for medical malpractice insurance have increased

substantially and are expected to continue to increase under existing conditions, both for physicians and surgeons and for hospitals[.]" 1976 Haw. Sess. Laws Act 219 (Act 219), § 1 at 523.[6] The purposes of Act 219, were to (1) "[s]tabilize the medical malpractice insurance situation . . ."; (2) decrease the costs and improve the efficiency of the legal system so that awards are more rationally connected to actual damages; (3)

---

[6] The legislative findings and purposes set forth in Act 219 are as follows:

**Legislative findings and purposes.** (a) The legislature finds that:

(1)   The national crisis in the area of medical malpractice affects Hawaii to the potential disadvantage of all recipients of health care;

(2)   There is only one insurance carrier that is actively providing medical malpractice coverage in the State;

(3)   Premium rates for medical malpractice insurance have increased substantially and are expected to continue to increase under existing conditions, both for physicians and surgeons and for hospitals; and

(4)   Act 161, Session Laws of Hawaii 1975, was enacted as a temporary means to become effective in the event that no insurance carrier would provide medical malpractice insurance coverage in the State, and insurance provided under such joint underwriting plan would be subject to the cost pressures that have led to the existing increasingly high premium rates.

(b)   The purposes of this Act are to:

(1)   Stabilize the medical malpractice insurance situation by reintroducing some principles of predictability and spreading of risk;

(2)   Decrease the costs of the legal system and improve the efficiency of its procedures to the end that awards are more rationally connected to actual damages;

(3)   Impose appropriate sanctions on errant health care providers, recognizing the integral role in this process played by the licensing system; and

(4)   Provide and improve the machinery for resolving patient grievances against health care providers by the addition of lay members to the board of medical examiners, the hiring of additional staff for the board, increasing the reporting requirements to the board, and changing the method of appointments to the board.

1976 Haw. Sess. Laws Act 219, § 1 at 523.

"[i]mpose appropriate sanctions on errant health care providers"; and (4) improve the resolution of patient grievances against health care providers by the board of medical examiners. Id.

In describing Act 219, the Hawaiʻi Supreme Court explained:

> A significant aspect of the legislative effort to make the system less costly and more efficient was the creation of "medical claim conciliation panels [to] review and render findings and advisory opinions on the issues of liability and damages in medical tort claims against health care providers." HRS § 671-11(a). The panels undoubtedly were established "to encourage early settlement of claims and to weed out unmeritorious claims." Hse. Stand. Comm. Rep. No. 417, in 1976 House Journal, at 1460.

Tobasa, 69 Haw. at 312, 741 P.2d at 1285 (brackets in original).

### B.

The term "medical tort," as used in HRS Chapter 671, is defined to mean "professional negligence, the rendering of professional service without informed consent, or an error or omission in professional practice, by a health care provider, which proximately causes death, injury, or other damage to a patient." HRS § 671-1. At the time relevant to this case,[2] the term "health care provider" was defined to mean "a physician or surgeon licensed under chapter 453, a physician and surgeon licensed under chapter 460, a podiatrist licensed under chapter 463E, a health care facility as defined in section 323D-2, and the employees of any of them." HRS § 671-1(1) (emphasis added).

The term "health care facility," in turn, is defined under HRS § 323D-2 (2010) as follows:

> "Health care facility" and "health care service" include any program, institution, place, building, or agency, or portion thereof, private or public, other than federal facilities or services, whether organized for profit or not, used, operated, or designed to provide medical diagnosis, treatment, nursing, rehabilitative, or preventive care to any person or persons. The terms include, but are not limited to, health care facilities and health care services commonly referred to as hospitals, extended care and rehabilitation centers, nursing homes, skilled nursing facilities, intermediate care facilities, hospices for the

---

[2] The allegations in Campos's complaint concern events occurring in 2004.

terminally ill that require licensure or certification by the department of health, kidney disease treatment centers including freestanding hemodialysis units, outpatient clinics, organized ambulatory health care facilities, emergency care facilities and centers, home health agencies, health maintenance organizations, and others providing similarly organized services regardless of nomenclature.

In 2003, the Legislature amended HRS Chapter 671 by adding a new provision, codified as HRS § 671-12.5 (Supp. 2011), which generally requires that before submitting a medical tort claim to an MCCP, the claimant or the claimant's attorney must (1) consult with a <u>licenced physician</u> knowledgeable or experienced in the same medical specialty as the health care professional against whom the claim is made and (2) certify based on such consultation that <u>the claim is meritorious</u>. 2003 Haw. Sess. Laws Act 211, § 1 at 638-39. HRS § 671-12.5 provides, in relevant part, that except for medical tort claims based on the lack of informed consent, "[a]ny claim filed with [an MCCP] under this chapter shall be accompanied by a certificate which declares one of the following:"

(1) The claimant or the claimant's attorney has consulted with at least one licenced physician "who is knowledgeable or experienced in the same medical speciality as the health care professional against whom the claim is made, and that the claimant or claimant's attorney has concluded on the basis of such consultation that there is a reasonable and meritorious cause for filing the claim." If a licensed physician in the same medical specialty is not available, the claimant or claimant's attorney may consult with a licensed physician "who is knowledgeable and experienced in a medical speciality that is as closely related as practicable to the medical specialty of the health care professional against whom the claim is made."

(2) The claimant or claimant's attorney was unable to obtain the consultation required by paragraph (1) because it would have impaired the claimant's action on statute of limitations grounds. In this event, the claimant or claimant's

attorney shall file the certificate required by paragraph (1) within ninety days after filing the claim with the MCCP.

(3)  The claimant or claimant's attorney was unable to obtain the consultation required by paragraph (1) "after the claimant or the claimant's attorney had made a good faith attempt to obtain such consultation and the physician contacted would not agree to such a consultation."

HRS § 671-12.5(d) provides that if the required certificate is not filed, "the claim shall not be received for filing by the medical claim conciliation panel."

In its conference committee report, the Legislature explained the impetus for and history behind the new legislation that became HRS § 671-12.5 as follows:

> Since 1976, medical tort claims against health providers are required to undergo a merit review by the MCCP before the claims may be litigated.  Your Committee finds that a growing number of baseless claims have been filed with the MCCP which results in increased costs and expenses for health care providers and health care facilities that must defend against the baseless claims.  These costs are passed on to physicians in the form of higher medical malpractice insurance premiums that ultimately result in higher health care services to the public.

Conf. Comm. Rep. No. 69, in 2003 House Journal, at 1727, 2003 Senate Journal, at 980 (emphasis added).

III.

Campos argues that HRS Chapter 671 and its definition of "medical tort" are intended to apply to medical malpractice claims, and not to her claims of neglect, abuse, and failure to provide a safe home asserted against a residential care home, its operator, and its case management agency.  The statutory language does not provide a definitive answer to the disputed question.  However, in light of the Legislature's intent in enacting HRS Chapter 671, as revealed by HRS Chapter 671's legislative history, and viewing the statutory provisions as a whole, we conclude that the claims raised in Campos's complaint do not constitute "medical torts" within the meaning of HRS § 671-1.  Accordingly, Campos was not required to submit her claims to an MCCP as a condition for her filing suit against the Defendants,

and the Circuit Court erred in dismissing her complaint based on her failure to submit her claims to an MCCP.

## A.

The statutory definition of "medical tort" is "professional negligence, the rendering of professional service without informed consent, or an error or omission in professional practice, by a health care provider, which proximately causes death, injury, or other damage to a patient." HRS § 671-1. HRS Chapter 671 does not define "professional negligence" or "professional practice." We therefore appropriately consider the "reason and spirit of the law," the Legislature's purpose in enacting it, and the definition of "medical tort" in the context of the entire statute to determine its "true meaning."

The legislative history of HRS Chapter 671 shows that it was directed at medical malpractice claims brought against physicians or health facilities arising out of errors or omissions in providing medical care to patients. In enacting HRS Chapter 671, the Legislature made specific findings regarding the national crisis in the area of medical malpractice that was affecting Hawai'i, the limited availability of medical malpractice insurance in Hawai'i, and the increasing premium rates for medical malpractice insurance "for physicians and surgeons and for hospitals." 1976 Haw. Sess. Laws Act 219, § 1 at 523. The stated purposes for HRS Chapter 671 included "stabiliz[ing] the medical malpractice insurance situation" and decreasing the costs and improving the efficiency of the legal system in awarding damages. Id. [8]

In light of the legislative history of HRS Chapter 671, we construe the term "medical tort" as essentially encompassing claims against health care providers for medical malpractice.

---

[8] An additional purpose was to improve the machinery for resolving patient grievances against health care providers by the board of medical examiners, see 1976 Haw. Sess. Laws Act 219, § 1 at 523, a board with the authority over licences "to practice medicine or surgery." HRS §§ 453-5 and 453-8 (1976).

These would generally be claims against physicians and related medical professionals arising out of the practice of medicine and the provision of medical care or treatment to patients. The legislative history of HRS Chapter 671 does not support a legislative intent to require that Campos's claims against Defendants be submitted to an MCCP as a condition to her filing suit. Campos's claims against Defendants are not medical malpractice claims. They do not involve claims against Defendants arising out of their practice of medicine and their provision of medical care or treatment to Campos.

Our conclusion that Campos's claims against Defendants were not intended by the Legislature to constitute "medical torts" that must be submitted to an MCCP is supported by sections of HRS Chapter 671 relating to the composition of an MCCP and the procedure for filing claims with an MCCP. Under HRS § 671-11 (Supp. 2004), one member of every three-member MCCP must be a licensed "physician or surgeon."

Moreover, as previously discussed, the Legislature in 2003 enacted HRS § 671-12.5, which imposes a general requirement that in order to submit a medical tort claim to an MCCP, the claimant or the claimant's attorney must first have (1) consulted with a licenced physician "who is knowledgeable or experienced in the same medical specialty as the health care professional against whom the claim is made" and (2) certify based on such consultation that "there is a reasonable and meritorious cause for filing the claim." The Legislature explained that the reason for imposing this additional requirement was to reduce the number of "baseless claims" filed with the MCCP and thereby reduce the costs for health care providers to defend against such claims, which costs are "passed on to physicians in the form of higher medical malpractice insurance premiums[.]"

The HRS Chapter 671 requirements, that a physician be a member of each MCCP and especially that a physician be consulted and provide a basis for concluding that the medical tort claim

submitted to the MCCP is meritorious, confirm that HRS Chapter 671 is directed at medical malpractice claims and does not encompass Campos's claims against Defendants. There is no basis for believing that a physician would be qualified to render an opinion on the standard of care applicable to an expanded ARCH or case management agency, or an opinion on whether there had been a breach of that standard of care. The required involvement of physicians in the process of submitting and resolving MCCP medical tort claims establishes that the Legislature intended the MCCP to address medical malpractice claims, and not claims involving breaches of duty by expanded ARCHs or case management agencies.[9]

B.

It is also questionable whether Defendants fall within the definition of "health care provider" for purposes of HRS Chapter 671. See HRS § 671-1(1). Expanded ARCHs and case management agencies are not specifically listed among the various facilities that qualify as health care providers by virtue of being health care facilities. See HRS § 323D-2.

In addition, the level of direct physician involvement in the operation of an extended ARCH is less than that of other facilities listed under the definition of "health care facility," such as skilled nursing facilities or intermediate care facilities. At the time relevant to this case, a skilled nursing facility was required to have a physician serve as a medical director, and an intermediate care facility was required to have

_____

[9] The cases construing the term "medical tort" cited by Defendants are inapposite. Those cases involved claims against physicians, hospitals, a hospital parent corporation, and a medical group arising out of the medical diagnosis and treatment provided by physicians. E.g., Garcia, 90 Hawai'i 425, 978 P.2d 863; Dubin v. Wakuzawa, 89 Hawai'i 188, 970 P.2d 496 (1998); Doe v. City and County of Honolulu, 93 Hawai'i 490, 6 P.3d 362 (App. 2000); Lee v. Hawaii Pacific Health, 121 Hawai'i 235, 216 P.3d 1258 (App. 2009). The courts' broad construction of the term medical torts in those cases to include related claims arising out the medical diagnosis and treatment provided by physicians does not support Defendants' contention that Campos's claims against them constitute medical torts.

a physician designated to serve as a medical advisor as needed for infectious disease control. See Hawai'i Administrative Rules (HAR) § 11-94-21 (1985). On the other hand, an expanded ARCH did not require the direct involvement of a physician in its operation. See HAR Title 11, Chapter 101. CMP, as a case management agency, would be less likely than Marrhey Care Home to qualify as a health care facility, as CMP's primary involvement in this case was to place Campos with Marrhey Care Home, and CMP was not directly involved in caring for Campos.

However, we need not decide whether Marrhey Care Home and CMP fall within the definition of "heath care provider." This is because we have already concluded that Campos's claims against Defendants did not involve medical malpractice claims arising out the provision of medical care or treatment to patients, and therefore Campos's claims were not "medical torts" within the meaning of HRS Chapter 671.

C.

Based on our analysis, we conclude that the Legislature did not intend that Campos's claims against Defendants constitute medical torts and that these claims are not medical torts subject to the requirements of HRS Chapter 671. By requiring that medical tort claims be submitted to an MCCP as a condition precedent for filing a lawsuit, HRS Chapter 671 imposes an additional barrier on litigants seeking relief on their tort claims. A party whose complaint is later dismissed for failing to submit a medical tort claim to an MCCP risks losing the claim altogether if the dismissal occurs after the statute of limitations has run. Under these circumstances, absent clearer and more explicit guidance from the Legislature, we believe that construing medical torts to encompass claims against extended ARCHs and case management agencies, as asserted by Campos against Defendants, is not advisable or warranted. The need to provide fair notice to parties pursing tort claims on the prerequisites

14

for filing suit provides an additional justification for our decision.

CONCLUSION

We vacate the Circuit Court's Amended Judgment and remand the case for further proceedings consistent with our Opinion.

On the briefs:

Mark S. Kawata
for Plaintiff-Appellant

Jamie A. Chuck
Alexander T. MacLaren
for Defendants-Appellees
Marrhey Care Home, LLC and
Marcela Oresco Carlos

Sydney K. Ayabe
J. Thomas Weber
(Ayabe, Chong, Nishimoto,
    Sia & Nakamura)
for Defendant-Appellee
Case Management Professionals, Inc.

Craig H. Nakamura

Daniel R. Foley