Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001343
28-FEB-2018
02:32 PM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


STATE OF HAWAI'I, Plaintiff-Appellee,
and
*Ex Rel.* MITCHELL KAHLE and HOLLY HUBER,
Plaintiffs-Relators-Appellees,
v.
ONE LOVE MINISTRIES and CALVARY CHAPEL CENTRAL OAHU,
Defendants-Appellants,
and
DOE ENTITIES 1-50; JOHN DOES 1-50; and JANE DOES 1-50,
Defendants.


NO. CAAP-14-0001343

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-0893-03)

FEBRUARY 28, 2018

NAKAMURA, CHIEF JUDGE, and REIFURTH and CHAN, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Plaintiffs-Relators-Appellees Mitchell Kahle and Holly Huber (Relators) brought a *qui tam* action[1] on behalf of the State of Hawai'i (State) against Defendants-Appellants One Love

---

[1] "'*Qui tam*' is an abbreviation for '*qui tam pro domino rege quam pro seipso*,'" which literally means 'he who as much for the king as for himself.'" United Seniors Ass'n, Inc. v. Phillip Morris USA, 500 F.3d 19, 24 (1st Cir. 2007) (internal quotation marks and citation omitted). Generally, statutes authorizing *qui tam* actions permit a private person, known as a "relator," to bring a civil action on behalf of the government against an individual or company who has knowingly presented a false of fraudulent claim for payment to the government.

Ministries (One Love) and Calvary Chapel Central Oahu (Calvary Chapel) (collectively, the Churches). Relators alleged that the Churches had violated the Hawaiʻi False Claims Act (HFCA), Hawaii Revised Statutes (HRS) Chapter 661, Part II, by fraudulently underpaying the State for the Churches' use of public school facilities under the Hawaiʻi Community Use of School Facilities Program (Community Use of Schools Program), Hawaii Administrative Rules (HAR) Chapter 39. The Churches moved to dismiss the Relators' First Amended Complaint, arguing that the Relators' claims were foreclosed by the HFCA's public disclosure bar and that the Relators did not fall within the original source exception.

The Circuit Court of the First Circuit (Circuit Court)[2] denied the Churches' motion to dismiss. On appeal, the Churches argue that the Circuit Court erred in: (1) retroactively applying the 2012 amendments to the HFCA to conduct that occurred prior to the amendments; (2) ruling that the public disclosure bar is an affirmative defense rather than a jurisdictional bar; (3) failing to dismiss the First Amended Complaint under the public disclosure bar; and (4) ruling that the Relators could meet the definition of an "original source."

We hold that the 2012 HFCA amendments do not apply retroactively to conduct that occurred prior to the effective date of the amendments. We further hold that the 2012 HFCA amendments changed the public disclosure bar from a jurisdictional bar to an affirmative defense. Therefore, in ruling on the Churches' motion to dismiss, the Circuit Court erred in applying the 2012 amended version of the HFCA (Amended HFCA) to all of the claims in the First Amended Complaint. Instead, the Circuit Court should have applied the pre-amended version of the HFCA (Pre-Amended HFCA) to claims arising before the effective date of the 2012 HFCA amendments and the Amended HFCA to claims arising after the effective date.

---

[2] The Honorable Virginia L. Crandall presided.

As explained below, we affirm the Circuit Court's denial of the Churches' motion to dismiss with respect to claims arising after the effective date of the 2012 HFCA amendments. We vacate the Circuit Court's denial of the Churches' motion to dismiss with respect to claims arising before the effective date of the 2012 HFCA amendments. We remand the case to permit the Circuit Court to apply the Pre-Amended HFCA in deciding the Churches' motion to dismiss with respect to claims arising before the effective date of the 2012 HFCA amendments and for further proceedings consistent with our Opinion.

BACKGROUND

I.

In December 2011, the Relators began a review of Hawai'i churches' use of public school facilities under the Community Use of Schools Program.[3] One Love and Calvary Chapel are two of the churches who used public school facilities for weekly services and special events under the Community Use of Schools Program.

On March 22, 2013, Relators filed a *qui tam* Complaint on behalf of the State against the Churches, alleging violations of the HFCA. The Circuit Court granted the Churches' motion to dismiss the Complaint, with leave for the Relators to file an amended complaint, on the ground that the Complaint failed to

---

[3] HAR § 8-39-1 (1996) provides, in pertinent part: "All public school buildings, facilities, and grounds shall be available for general recreational purposes and for public and community use whenever these activities do not interfere with the normal and usual activities of the school and its pupils as provided by law." Churches are classified as Type III users. HAR § 8-39-3 (1996). For Type III users, the following fees and charges are applicable to their use of school facilities:

(A) A rental fee shall be assessed.

(B) The service charge for custodial services when required by the school shall be for a minimum of two hours. The total custodial charge shall be the current wages multiplied by the number of hours the custodian(s) is on duty.

(C) A service charge for the cost of utilities shall be assessed.

HAR § 8-39-5 (1996).

3

state the fraud claims with sufficient particularity. The Circuit Court denied the motion to dismiss, without prejudice, as to the other grounds raised.

On February 20, 2014, the Relators filed a First Amended Complaint against the Churches. The First Amended Complaint contained numerous factual allegations regarding the Churches' use of school facilities from 2007 to 2013 and asserted that the Churches had violated the HFCA in three ways. Count 1 alleged the violation of HRS § 661-21(a)(6); Count 2 alleged the violation of HRS § 661-21(a)(7); and Count 3 alleged the violation of HRS § 661-21(a)(8).[4]

---

[4] As amended in 2012, HRS § 661-21(a)(6), (a)(7), and (a)(8) (2016) provide, in relevant part:

(a) . . . any person who:

   . . .

(6)   Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals, or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State;

(7)   Is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim; or

(8)   Conspires to commit any of the conduct described in this subsection,

shall be liable to the State for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages that the State sustains due to the act of that person.

The 2012 amendments changed the numbering of the subparagraphs in the previous version of HRS § 661-21(a). The current subsection (a)(6) was previously (a)(7), the current (a)(7) was previously (a)(8), and the current (a)(8) was previously (a)(3). The 2012 amendments also amended the language of the previous subsections (a)(7) and (a)(3). Prior to the 2012 amendments, HRS § 661-21 (Supp. 2011) provided, in relevant part, as follows:

(a) . . . any person who:

   . . .

(continued...)

4

In the First Amended Complaint, Relators asserted that they were "original sources" of the information contained in the First Amended Complaint in that they "(i) obtained direct and independent knowledge of the information on which the allegations herein are based; (ii) have materially added to what little information was publicly available prior to their efforts; and (iii) have voluntarily provided said information to the Attorney General of the State of Hawai'i before filing this action." Among other things, Relators alleged in the First Amended Complaint that they: (1) visited schools (including schools used by One Love and Calvary Chapel) to observe, photograph, and document Hawai'i churches' actual use of school facilities, "including the specific days, hours, activities and facilities and utilities that churches were using"; (2) researched laws, rules, and legislative history relating to the Community Use of Schools Program; (3) reviewed Hawai'i Department of Education practices and policies and Board of Education minutes and materials relating to the Community Use of Schools Program; (4) requested and obtained pursuant to the Uniform Information Practices Act (UIPA) copies of Hawai'i churches' "Form BO-1 Application[s] for Use of School Buildings, Facilities, or Grounds" (BO-1 Applications), including the BO-1 Applications

---

[4]/ (...continued)
(3)    Conspires to defraud the State by getting a false or
       fraudulent claim allowed or paid;

. . .

(7)    Knowingly makes, uses, or causes to be made or used, a false
       record or statement to conceal, avoid, or decrease an
       obligation to pay or transmit money or property to the
       State; or

(8)    Is a beneficiary of an inadvertent submission of a false
       claim to the State, who subsequently discovers the falsity
       of the claim, and fails to disclose the false claim to the
       State within a reasonable time after discovery of the false
       claim;

shall be liable to the State for a civil penalty of not less than
$5,000 and not more than $10,000, plus three times the amount of
damages that the State sustains due to the act of that person.

submitted by One Love and Calvary Chapel; (5) designed and programed a "custom relational database" to analyze and review the BO-1 Applications they obtained; (6) communicated directly with school officials in person and through email, including sending school principals customized requests for information based on BO-1 Applications for their school; (7) searched the internet and monitored and reviewed various church websites; (8) monitored churches' activities through personal on-site surveillance, through observation of service broadcasts on television and online, and by reviewing church newsletters and email announcements; (9) submitted BO-1 Applications and rented school facilities themselves; and (10) reviewed and analyzed the information they obtained and programmed spreadsheets "to calculate the amounts each church was actually paying a school, as compared to the amounts each church had underpaid[.]"

The Churches filed a motion to dismiss the First Amended Complaint pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 12(b)(1) and Rule 12(b)(6) (2000).[5] The Churches sought dismissal pursuant to HRCP Rule 12(b)(1) on the ground that the Relators were jurisdictionally foreclosed from bringing the First Amended Complaint because of the HFCA's public disclosure bar and because the Relators did not fall within the original source exception to the public disclosure bar. The Churches sought dismissal under HRCP Rule 12(b)(6) on the ground that the Relators had failed to state a claim on which relief could be granted.

The Circuit Court denied the Churches' motion to dismiss insofar as it was based on HRCP Rule 12(b)(1). The Circuit Court ruled that the HFCA's public disclosure bar

[5] HRCP Rule 12(b) provides in relevant part:

Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, . . . (6) failure to state a claim upon which relief can be granted[.]

constituted an affirmative defense, and not a jurisdictional bar, and it therefore denied the Churches' claim that it lacked subject matter jurisdiction over the First Amended Complaint. The Circuit Court initially granted in part and denied in part the Churches' motion to dismiss based on HRCP Rule 12(b)(6). However, the Circuit Court later reconsidered its partial granting of the motion under HRCP Rule 12(b)(6), and it denied the Churches' motion insofar as it was based on HRCP Rule 12(b)(6). Thus, the Circuit Court's ultimate decision was to completely deny the Churches' motion to dismiss, rejecting the motion on both the HRCP Rule 12(b)(1) and the HRCP 12(b)(6) grounds asserted by the Churches. The Circuit Court granted the Churches' motion to file an interlocutory appeal from its denial of their motion to dismiss, and this appeal followed.

DISCUSSION

I.

The Hawai'i appellate courts have not previously construed the HFCA. The HFCA, however, is patterned after the federal False Claims Act (FCA), 31 U.S.C. §§ 3729-3733. We therefore look to cases interpreting the FCA for guidance. See French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004); State v. Ontai, 84 Hawai'i 56, 61, 929 P.2d 69, 74 (1996); Trivectra v. Ushijima, 112 Hawai'i 90, 101-02, 144 P.3d 1, 12-13 (2006).

A.

The historical development of the FCA is instructive as it helps provide context in understanding provisions in the FCA that correspond to provisions in the HFCA. The United States Supreme Court described the historical development of the FCA as follows:

> As originally enacted, the FCA did not limit the sources from which a relator could acquire the information to bring a *qui tam* action. In United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), we upheld the relator's recovery even though he had discovered the fraud by reading a federal criminal indictment -- a quintessential "parasitic" suit. Id., at 545-548, 63 S.Ct.

7

379; see id., at 545, 63 S.Ct. 379 ("Even if, as the government suggests, the petitioner has contributed nothing to the discovery of this crime, he has contributed much to accomplishing one of the purposes for which the Act was passed"). Congress promptly reacted to that decision by amending the statute to preclude *qui tam* actions "based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." This amendment erected what came to be known as a Government knowledge bar: "Once the United States learned of a false claim, only the Government could assert its rights under the FCA against the false claimant." In the years that followed the 1943 amendment, the volume and efficacy of *qui tam* litigation dwindled. "Seeking the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own," Congress overhauled the statute once again in 1986 "to make the FCA a 'more useful tool against fraud in modern times[.]'"

. . . § 3730(e)(4) was enacted in 1986 as part of this larger reform. Congress apparently concluded that a total bar on *qui tam* actions based on information already in the Government's possession thwarted a significant number of potentially valuable claims. Rather than simply repeal the Government knowledge bar, however, Congress replaced it with the public disclosure bar in an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits such as the one in Hess.

Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 293-95 (2010) (brackets and some citations omitted).

B.

The HFCA was first enacted in 2000 "to allow for qui tam, or citizen attorney general, lawsuits to recover against persons who submit fraudulent claims for payment by the State." Conf. Comm. Rep. No. 84 in 2000 Senate Journal, at 768, 2000 House Journal, at 891. When first enacted, the HFCA included a jurisdictional public disclosure bar, which was similar to the one in the 1986 FCA, and provided as follows:

§ 661-28 Jurisdiction. No court shall have jurisdiction over an action under this part based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a legislative or administrative report, hearing, audit, or investigation, or from the news media, unless the action is brought by the attorney general or the person bringing the action is an original source of the information. For purposes of this section:

8

> "Original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this part that is based on the information, and whose information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure.

HRS § 661-28 (Supp. 2011).[6]

Congress amended the FCA in 2010. In 2012, the Hawai'i Legislature amended the HFCA to "bring the State's laws regarding false claims against the State and the counties into compliance with the federal False Claims Act." S. Stand. Comm. Rep. No. 3304, in 2012 Senate Journal, at 1063. The 2012 HFCA amendments include an amended public disclosure bar and "original source" definition that closely parallels the language of the amendments made in 2010 to the FCA. As amended in 2012, the HFCA provides:

> (b) The court shall dismiss an action or claim under this part, unless opposed by the State, if the allegations or transactions alleged in the action or claim are substantially the same as those publicly disclosed:
>
> >(1)    In a state criminal, civil, or administrative hearing in which the State or its agent is a party;
>
> >(2)    In a state legislative or other state report, hearing, audit, or investigation; or
>
> >(3)    By the news media,
>
> unless the action is brought by the attorney general or the person bringing the action is an original source of the information.
>
> (c) For purposes of this section, "original source" means an individual who:
>
> >(1)    Prior to public disclosure under subsection (b), has voluntarily disclosed to the State the information on which the allegations or transactions in a claim are based; or
>
> >(2)    Has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has

---

[6] The public disclosure bar in the 1986 FCA had language very similar to HRS § 661-28 (Supp. 2011), except that the 1986 FCA's definition of "original source" did not include the requirement that the "[individual's] information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure." See 31 U.S.C. § 3730(e)(4) (1986).

voluntarily provided the information to the
State before filing an action under this part.

HRS § 661-31 (b), (c) (2016).

## II.

The Churches argue that the Circuit Court erred in retroactively applying the 2012 HFCA amendments to conduct that occurred prior to the amendments. We agree.

Generally, laws do not apply retroactively. HRS § 1-3 (1993) provides: "No law has any retrospective operation, unless otherwise expressed or obviously intended." "Hawaiʻi statutory and case law discourage retroactive application of laws and rules in the absence of language showing that such operation was intended." Gap v. Puna Geothermal Venture, 106 Hawaiʻi 325, 333, 104 P.3d 912, 920 (2004).

The effective date of the 2012 amendments to the HFCA was July 9, 2012. 2012 Haw. Sess. Laws Act 294, § 11 at 1003. Not only is there no indication that the 2012 HFCA amendments were intended to apply retroactively, but the legislation enacting the 2012 HFCA amendments specifically states: "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before the effective date of this Act." Id. at § 9 at 1003.

The First Amended Complaint alleged that the Churches engaged in actionable conduct between 2007 and 2013. It is clear that the Amended HFCA only applies to claims arising after the July 9, 2012, effective date of the 2012 HFCA amendments, and that the Pre-Amended HFCA applies to claims arising before that date.[2] Therefore, in ruling on the Churches' motion to dismiss, the Circuit Court erred in applying the Amended HFCA to all of the Realtors' claims.

_____

[2] Federal courts have not applied substantive amendments to the FCA retroactively, but only prospectively. See Graham County, 559 U.S. at 283 n.1 (2010 amendments to the FCA); Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 404 n.1 (2011) (same).

10

III.

As explained below, the 2012 HFCA amendments changed the public disclosure bar from a jurisdictional bar to an affirmative defense on their effective date of July 9, 2012. The parties are in agreement that prior to the 2012 HFCA amendments, the public disclosure bar under the Pre-Amended HFCA was a jurisdictional bar. HRS § 661-28 (Supp. 2011) of the Pre-Amended HFCA was entitled "Jurisdiction" and contained the following operative language: "No court shall have jurisdiction over an action under this part based upon the public disclosure of allegations or transactions in [certain specified fora] . . . ." The United States Supreme Court, construing corresponding language in the FCA (before it was amended in 2010), held that the public disclosure bar was jurisdictional. Rockwell Int'l Corp. v. United States, 549 U.S. 457, 468-69 (2007).

The 2012 HFCA amendments, however, repealed HRS § 661-28 (Supp. 2011) and moved the public disclosure bar to a new section, HRS § 661-31. The new HRS § 661-31 replaced the former language "No court shall have jurisdiction over an action under this part" with "The court shall dismiss an action or claim under this part, unless opposed by the State, . . . ." The majority of federal courts construing the corresponding amendment to the FCA have held that the amendment changed the public disclosure bar from a jurisdictional bar to an affirmative defense. The reasoning supporting this majority view has been expressed as follows:

> Under the prior version of the statute, [the public-disclosure bar] operated as a jurisdictional limitation -- the public-disclosure bar, if applicable, divested the district court of subject-matter jurisdiction over the action. See 31 U.S.C. § 3730(e)(4) (2005) ("No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations . . . ." (emphasis added)); Rockwell Int'l Corp. v. United States, 549 U.S. 457, 468-69, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) (explaining that § 3730(e)(4) is a "jurisdiction-removing provision"). It is apparent, however, that the public-disclosure bar is no longer jurisdictional. The amended statute does not mention jurisdiction but instead

11

states that in cases where the bar is applicable, the court "shall dismiss" the action "unless opposed by the Government." 31 U.S.C. § 3730(e)(4) (2010). The 2010 amendments thus deleted the unambiguous jurisdiction-removing language previously contained in § 3730(e)(4) and replaced it with a generic, not-obviously-jurisdictional phrase ("shall dismiss"), while at the same time retaining jurisdiction-removing language in §§ 3730(e)(1) and (e)(2). In our view, these changes make it clear that the public-disclosure bar is no longer a jurisdiction-removing provision. See, e.g., Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457 (1930) ("The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended."); Pirie v. Chi. Title & Trust Co., 182 U.S. 438, 448, 21 S.Ct. 906, 45 L.Ed. 1171 (1901) ("When the purpose of a prior law is continued, usually its words are, and an omission of the words implies an omission of the purpose."); Chertkof v. United States, 676 F.2d 984, 987 (4th Cir.1982) ("[T]he deletion of language, having so distinct a meaning, almost compels the opposite result when words of such plain meaning are excised."). Indeed, it is difficult to understand how the amended public-disclosure bar could be jurisdictional when the government has the ability to veto a dismissal under that section. See Gonzalez v. Thaler, [565 U.S. 134], 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."); Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (en banc) ("Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties."). And even if the changes somehow did not establish Congress' intent to convert the public-disclosure bar into a non-jurisdictional basis for dismissal, the omission of the jurisdictional language would nonetheless require us to treat the amended public-disclosure bar as such. See Sebelius v. Auburn Reg'l Med. Ctr., [568 U.S. 145], 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013) (Unless "Congress has clearly stated that the [statutory limitation] is jurisdictional . . . , courts should treat the restriction as nonjurisdictional in character." (internal quotation marks and alteration omitted)).

United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 916-17 (4th Cir. 2013) (footnote omitted; some brackets in original).

Relying on federal courts expressing the minority view, the Churches argue that the public disclosure bar should continue to be viewed as a jurisdictional bar even after the 2012 HFCA amendments. However, we find the reasoning of the majority view to be more persuasive and conclude that the 2012 HFCA amendments changed the public disclosure bar from a jurisdictional bar to an

12

affirmative defense on July 9, 2012, the effective date of the 2012 HFCA amendments.

IV.

This change was significant because it had a direct impact on the appropriate standards to apply in deciding the Churches' motion to dismiss. In deciding the Churches' motion to dismiss, the Circuit Court should have treated the public disclosure bar as jurisdictional (and applied the standard for dismissal under HRCP Rule 12(b)(1)) with respect to claims arising before July 9, 2012, and as an affirmative defense (and applied the standard for dismissal under HRCP Rule 12(b)(6)) with respect to claims arising after July 9, 2012. Instead, the Circuit Court treated the public disclosure bar as an affirmative defense with respect to all of the Relators' claims asserted in the First Amended Complaint. Therefore, the Circuit Court applied an incorrect standard in ruling on the Churches' motion to dismiss regarding claims arising before July 9, 2012.

With respect to claims arising after July 9, 2012, the public disclosure bar, which encompasses the original source exception, is an affirmative defense. In order to obtain dismissal of such claims, the Churches were required to establish under HRCP Rule 12(b)(6) that the Relators' First Amended Complaint failed to state a claim on which relief could be granted. The standard for a court to apply in deciding a motion to dismiss under HRCP Rule 12(b)(6) is well established:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint[,] our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true.

In re Estate of Rogers, 103 Hawai'i 275, 280-81, 81 P.3d 1190, 1195-96 (2003) (internal citations, brackets, and ellipsis points

omitted). We review a trial court's ruling on a motion to dismiss under HRCP Rule 12(b)(6) de novo. Wright v. Home Depot U.S.A., Inc., 111 Hawai'i 401, 406, 142 P.3d 265, 270 (2006).

Unlike a motion to dismiss under HRCP Rule 12(b)(6), the standard for a court to apply in deciding a motion to dismiss under HRCP Rule 12(b)(1) for lack of jurisdiction permits a court, under certain circumstances, to consider evidence outside the complaint and to resolve factual disputes. The Hawai'i Supreme Court has adopted the following standard regarding a motion to dismiss under HRCP Rule 12(b)(1):

> Our review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiffs. Dismissal is improper unless "it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."
>
> [Love v. United States, 871 F.2d 1488, 1491 (9th Cir. 1989)]. However, "when considering a motion to dismiss pursuant to HRCP Rule 12(b)(1) the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavit and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy, 850 F.2d at 560 (citations omitted); see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 213 (1990).

Yamane v. Pohlson, 111 Hawai'i 74, 81, 137 P.3d 980, 987 (2006) (brackets omitted).

In considering motions to dismiss for lack of jurisdiction under HRCP Rule 12(b)(1), we have joined other courts in distinguishing between facial and factual challenges to subject matter jurisdiction under HRCP Rule 12(b)(1). State v. Alagao, 77 Hawai'i 260, 262, 883 P.2d 682, 684 (App. 1994); Hopper v. Solvay Pharmaceuticals, Inc., 590 F. Supp. 2d 1352, 1358 (M.D. Fla. 2008). A facial challenge asserts that the absence of jurisdiction can be established by considering only the allegations of the complaint itself. The standard applicable to a facial challenge to jurisdiction under HRCP Rule 12(b)(1) is basically the same as that applied for failure to state a claim under HRCP Rule 12(b)(6) -- the allegations of the complaint must

be accepted as true and construed in the light most favorable to the plaintiff. See Yamane, 111 Hawai'i at 81, 137 P.3d at 987; Hopper, 590 F. Supp. 2d at 1358.

A factual challenge to jurisdiction attacks the validity or truthfulness of the facts alleged which support the existence of jurisdiction. To resolve a factual challenge, the court must generally consider matters outside the pleadings. For a factual challenge to jurisdiction under HRCP Rule 12(b)(1), the court is permitted to consider evidence outside the pleadings and resolve disputed facts that are necessary to determine the existence of jurisdiction. See Yamane, 111 Hawai'i at 81, 137 P.3d at 987; Alagao, 77 Hawai'i at 262, 883 P.2d at 684. However, because the trial court is the trier of fact for the factual disputes that are necessary to resolve a factual challenge to jurisdiction, the trial court, and not the appellate court, must make the necessary factual findings in the first instance. See May, 737 F.3d at 919-20. In addition, because a factual challenge to jurisdiction involves the resolution of factual disputes, the trial court may be required to provide the plaintiff with the opportunity for discovery and to hold an evidentiary hearing to resolve the dispute. Id.; Hopper, 590 F. Supp. 2d at 1358; see also, Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009). The disputed jurisdictional facts found by the trial court in ruling on a factual challenge to jurisdiction are subject to the clearly erroneous standard of review.

V.

We apply these principles in reviewing the Circuit Court's denial of the Churches' motion to dismiss. The Churches argue that the Circuit Court erred in denying their motion to dismiss the Relators' First Amended Complaint because the public disclosure bar was applicable and the Relators did not satisfy the original source exception under either the Pre-Amended HFCA or the Amended HFCA.

15

Under the Pre-Amended HFCA, the public disclosure bar applies to complaints that are "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a legislative or administrative report, hearing, audit, or investigation, or from the news media." HRS § 661-28 (Supp. 2011). Under the Amended HFCA, the public disclosure bar applies to "allegations or transactions alleged in the [complaint that] are substantially the same as those publicly disclosed: (1) In a state criminal, civil, or administrative hearing in which the State or its agent is a party; (2) In a state legislative or other state report, hearing, audit, or investigation; or (3) By the news media[.]" HRS § 661-31(b) (format altered).

With respect to the exception to the public disclosure bar where a complaint is brought by an original source, the Pre-Amended HFCA defines an original source as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this part that is based on the information, and whose information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure." HRS § 661-28 (Supp. 2011). Under the Amended HFCA, an original source is defined in relevant part as "an individual who . . . [h]as knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the State before filing an action under this part." HRS § 661-31(c)(2).

A.

In denying the Churches' motion to dismiss pursuant to HRCP Rule 12(b)(6), the Circuit Court ruled that the "claims and allegations in the First Amended Complaint sufficiently state a claim against" the Churches "because Relators have independent knowledge that materially adds to the publicly disclosed

16

allegations or transactions that are set forth in the First Amended Complaint." [9] The Circuit Court therefore applied the HRCP Rule 12(b)(6) standard and the definition of original source in the Amended HFCA in rendering its decision. With respect to the claims in the First Amended Complaint arising after July 9, 2012, we conclude that the Circuit Court was correct in applying the HRCP Rule 12(b)(6) standard and the Amended HFCA, and that it properly denied the Churches' motion to dismiss as to these claims.

As previously discussed, the public disclosure bar (which encompasses the original source exception) constitutes an affirmative defense under the Amended HFCA. In the First Amended Complaint, the Relators alleged that they were "original sources" as the result of various actions they took to investigate and uncover the alleged fraud, including visiting schools to observe and document Hawai'i churches' actual use of school facilities; communicating with school officials to obtain information regarding the extent of the churches' use of school facilities; programing a database and spreadsheets to analyze and determine the amount of the alleged underpayments; and renting out school facilities themselves to familiarize themselves with the applicable procedures. Accepting the allegations in the First Amended Complaint as true and viewing them in the light most favorable to the Relators, we cannot say that it appears beyond doubt that the Relators would not be able to prove that they fall within the original source exception under the Amended HFCA. Accordingly, we affirm the Circuit Court's denial of the Churches' motion to dismiss with respect to claims arising after July 9, 2012.

---

[9] We do not read the Circuit Court's ruling as a determination that the Relators satisfy the definition of original sources, but only a determination that under the HRCP Rule 12(b)(6) standard, the Churches failed to show that the Relators would not be able to prove that they satisfy the definition of original sources.

B.

Because the 2012 HFCA amendments do not apply retroactively, the Circuit Court erred in applying the Amended HFCA in denying the Churches' motion to dismiss with respect to claims arising before July 9, 2012. As to these claims, the public disclosure bar and the original source exception raise questions of jurisdiction that are subject to determination under HRCP Rule 12(b)(1). Therefore, the Circuit Court erred in applying HRCP Rule 12(b)(6) and the Amended HFCA in denying the Churches' motion to dismiss with respect to claims arising before July 9, 2012.

Nevertheless, in evaluating a facial challenge to jurisdiction under HRCP 12(b)(1), a court applies a standard that is comparable to the standard under HRCP Rule 12(b)(6). If the Churches had solely raised a facial challenge to jurisdiction regarding claims arising before July 9, 2012, we would conclude that the Circuit Court did not err in denying such a facial challenge. This is because, accepting the allegations in the First Amended Complaint as true and viewing them in the light most favorable to the Relators, it would not appear beyond doubt that the Relators could not prove that they satisfied the requirements for jurisdiction under the Pre-Amended HFCA.

It is clear, however, that the Churches raised a factual challenge to jurisdiction in moving to dismiss claims arising before July 9, 2012. In support of their motion to dismiss, the Churches submitted exhibits that were not contained in the First Amended Complaint. They also sought to have the Circuit Court resolve facts disputed by the parties relating to the public disclosure bar and original source exception. In this regard, we note that aside from agreeing that the BO-1 Applications obtained by the Relators in response to their UIPA requests constitute publicly disclosed materials for purposes of applying the public disclosure bar, the parties disputed each other's claims on almost every other matter related to the

applicability of the public disclosure bar and original source exception. These included factual disputes regarding how and when the Relators acquired knowledge and information that formed the basis for their First Amended Complaint and the significance of the Relator's independent investigation and activities in revealing the alleged fraud.

In denying the motion to dismiss, the Circuit Court did not resolve the factual disputes that were necessary to determine the Churches' factual challenge to jurisdiction based on the public disclosure bar under the Pre-Amended HFCA. Rather, the Circuit Court decided the Church's factual challenge to jurisdiction regarding claims arising before July 9, 2012, under the HRCP Rule 12(b)(6) standard, which required it to accept the Relators' allegations in the First Amended Complaint as true and to view the allegations in the light most favorable to the Relators. The Circuit Court erred in doing so.

C.

As the trier of fact, the Circuit Court must resolve in the first instance the factual disputes that are necessary to determine the Churches' factual challenge to jurisdiction based on the public disclosure bar under the Pre-Amended HFCA. See Alagao, 77 Hawai'i at 262-64, 883 P.2d at 684-86; May, 737 F.3d at 919-20. We therefore vacate the Circuit Court's denial of the Churches' motion to dismiss with respect to claims arising before July 9, 2012. On remand, the Circuit Court shall resolve any factual disputes necessary to determine whether the public disclosure bar is applicable, including whether the Relators are original sources under the Pre-Amended HFCA, for claims arising before July 9, 2012. In deciding such factual disputes, the Circuit Court may determine that it is necessary to provide the Relators with the opportunity for discovery on matters relevant to the Churches' jurisdictional challenge and to hold an evidentiary hearing. The Churches may also benefit from

discovery regarding how and when the Relators obtained the information on which particular alleged false claims are based.

We note that questions of whether the public disclosure bar and the original source exception apply under the Pre-Amended HFCA depend upon the scope of the particular false claim at issue and the facts and circumstances relevant to that claim. It therefore may be helpful for the Circuit Court to require the parties to specifically address the scope of the false claim at issue, the extent to which each claim is based on publicly disclosed information that is subject to the public disclosure bar, the Relators' "direct and independent knowledge" of the information on which the claim is based, and how the Relators' "information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure." To enable an appellate court to effectively review the Circuit Court's rulings post-remand, it would also be helpful for the Circuit Court to make specific factual findings on the predicate facts that it relied upon in determining whether the public disclosure bar and the original source exception are applicable.

## CONCLUSION

Based on the foregoing, we affirm in part and vacate in part the Circuit Court's denial of the Churches' motion to dismiss the First Amended Complaint, and we remand the case for further proceedings consistent with this Opinion.

On the arguments:

James Hochberg
Jeremiah Galus
Erik Stanley
David J. Hacker (on the briefs)
for Defendants-Appellants

James J. Bickerton
Stephen M. Tannenbaum
(Bickerton Dang)
for Plaintiffs-Relators-Appellees

*Craig H. Nakamura*

20